Ruth M. KIRBY

v.

DANCE FREIGHT LINES, Michigan Mutual Liability Insurance Company.

Civ. A. No. 4792.

United States District Court
E. D. Tennessee, N. D.

Jan. 24, 1964.

William P. Newkirk, Bolt & Newkirk, Knoxville, Tenn., for plaintiff.

Louis Hofferbert, Poore, Cox, Baker & McAuley, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, Chief Judge.

This case arose under the Workmen's Compensation Law of Tennessee.

Mr. Lawrence C. Kirby worked as a truck driver for the defendant, Dance Freight Lines, Inc., over a long period, having started around the year 1945 and continued until a physical breakdown prohibited him from working around March 17, 1963. He died July 17, 1963 at one of the hospitals in Knoxville, Tennessee.

During the last few months of his life he was hospitalized on three separate occasions. The first was around February 23, 1963 which continued to around March 3; the second hospitalization was later, sometime in April, and the final hospitalization was from June 30, the date of his admission, until July 17, 1963, the date of his demise.

Immediately after his death, Dr. B. B. Bellomy, an experienced pathologist of Knoxville, performed an autopsy on his body, finding that the deceased suffered with multiple troubles including high blood pressure, gangrene of the tissue in the small bowel, which, in the opinion of the pathologist, was the cause of death. In addition, he found hardening of the arteries over the entire body, particularly in the area of the heart including the aorta. There was a swelling of the aorta, or in technical language, an aneurysm which would have caused his death within a period of one or two years from the time it occurred, in the opinion of Dr. Bellomy. His high blood pressure placed a strain on the heart and caused an enlargement of his heart. The sclerotic condition had existed over a period of years. He also had a kidney ailment which may have been a concommitant of his heart disease or a result of his heart disease.

Worry or nervous strain is calculated to raise the blood pressure and is deleterious, according to the doctors, to a well man, or to a man with the multiple troubles with which Mr. Kirby suffered.

Mrs. Ruth Kirby, the deceased's widow, has sued to recover workmen's compensation benefits for the death of her husband, her theory being that his death resulted from an accident that arose out of and in the course of his employment by the Dance Freight Lines, Inc., and therefore covered by the Workmen's Compensation Act.

She described in detail his complaints during the last six months of his life. She said that in February he began to run a high fever and complain of hurting in the chest, joints and pain in the throat. At that time, he went to Dr. Faulkner, his family physician, who gave him penicillin, and his color became yellowish.

Doctor Faulkner put him in the hospital in February, as previously indicated, in 1963.

When the deceased came home from a trip, which involved driving a truck, on February 20, 1963 early in the morning, he was nauseated, vomiting, had high fever, chest pains, pains in the left arm, and said he had the flu. He was a whole lot worse than he had been in the past. He had been complaining of aches and pains which he had considered arose from the flu. Mrs. Kirby met him on that occasion and drove him home and said he was delirious most of the night and during the next day.

As indicated, he was placed in the hospital on February 23 and remained there until March 3, 1963. He appeared better when he was released from the hospital, and this would naturally follow since it would hardly be presumed that he would otherwise have been released from the hospital by his doctor.

He remained away from work about one week going to the company physician for a physical examination during the period. He returned to work on March 11, 1963 and made a round trip to Athens, Georgia. Thereafter, he made three round trips in the performance of his duties, two from Knoxville to Athens and return and two to Charlotte, North Carolina and return. After making the fourth trip in March he did not return to work. He did visit the office of his employer a few times. Deceased talked to his employer's representative about workmen's compensation and seemed to be extremely nervous and upset.

Deceased looked much worse to his wife after his four trips than he did before. He went to Dr. Henson, the company doctor, and Dr. Henson recommended that he go to a cardiologist or heart specialist, Dr. J. E. Acker, which he did.

Under the treatment of Dr. Acker, he improved greatly in about three weeks. Dr. Acker put him in the hospital on that occasion. He was extremely nervous after he got out of the hospital and Dr. Acker told him he had suffered a coronary attack. He had faith in Dr. Acker, and was in much better spirits. This condition lasted from three to three and a half weeks. Dr. Acker told him that the X-ray pictures showed that he just had a little scar left on his heart and that he would be able to return to work in a short time.

This information pleased Mr. Kirby immensely. In fact, according to the widow, Dr. Acker released him to return to work on June 1, 1963 but he was not able to return. He complained with pains in his stomach at the time he was taking the blood thinner. He also complained of high fever. As previously indicated he thought he had the flu.

The widow was of the opinion that he called Mr. Parsons of the defendant and Mr. Parsons told him that he was suspended and that upset him tremendously. The record shows rather clearly that Dr. Henson's examination indicated that because of his heart disease he did not meet the regulations of the Interstate Commerce Commission as a driver and it was not the order of Mr. Parsons that prevented him from returning to work but it was the order of the doctor who presumably was trying to abide by the regulations of the Interstate Commerce Commission.

Doctor Henson testified in detail by deposition and it is not necessary to review in detail his testimony except to say that he expressed the opinion that there was no causal relation between deceased's condition and his work.

Doctor Novinger, a general surgeon of Knoxville, who appeared to the Court to do his best to explain fairly the results of his examination of the deceased, testified in substance that the driving of these large tractor-trailer rigs is a hard job. The Court knew that. As indicated by counsel for plaintiff in his argument, the Court may take judicial knowledge of certain things and one of which is that the driving of the tractor-trailer rigs is not an easy job.

The Court knows further, as testified by Dr. Novinger, that a person with heart trouble of the character of the deceased, should not work, especially by driving tractor-trailer rigs.

There is no proof in this record in the opinion of the Court, that establishes the fact that the deceased met with an accident which arose out of and in the course of his employment for the defendant.

The driving of the truck by the deceased on the four occasions in March 1963 may have very well aggravated his diseased heart condition. Aggravation is not enough to make out a case in a case of this kind. In addition to the aggravation it must be shown by a pre-

ponderance of the evidence that the driving of the truck aggravated plaintiff's diseased condition and that as a proximate result of such aggravation his life was shortened, or, to put it in other language, that his death was accelerated.

The most the Court could do under this proof would be to speculate whether those four trips shortened the deceased's life. They may have, as indicated by one or more of the doctors and they may have not. The tenor of the testimony is that they may have temporarily increased his heart trouble but the proof is that he lived some four months after the last trip and that any aggravation of the heart condition was temporary as related to the driving of the tractor-trailer rig in March 1963.

■ It is the opinion of the Court, and the Court finds, that the proof fails to show that the plaintiff's intestate's death was caused by an accident arising out of or in the course of his employment or that his heart trouble was aggravated to the extent that it shortened his life or accelerated his death.

The preponderance of the proof shows that plaintiff's intestate's death resulted from a deterioration of the body caused by multiple diseases, the majority of which have been pointed out by the Court heretofore.

■ The fact that the driving of the tractor-trailer rig may have been a strain on the body is not sufficient to make out a case of liability under the Workmen's Compensation Act. See Mason & Dixon Lines, Inc. v. Gregory, 206 Tenn. 525, 334 S.W.2d 939.

This case is more like the case of McMahan v. Travelers Insurance Company which was tried in this Court and reported in 114 F.Supp. 286. The Court has tried many heart cases under the Workmen's Compensation Law. In the majority of these cases, the employee's death resulted from heart failure in the course of or very shortly after a period of work and the heart failure resulted from over-exertion or nervous strain at-

tributable to some precise injury that occurred at a definite time.

In this case, the employee lived, as previously indicated, about four months after he last worked for the Dance Freight Lines, Inc.

The proof fails to show causal connection between his work and his death.