THE TRAVELERS INSURANCE COMPANY, Plaintiff in Error,

*v.*

MRS. EVELYN ELLIOT GOOGE, Defendant in Error.

397 S.W.2d 368.

(*Knoxville,* September Term, 1965.)

Opinion filed December 6, 1965.

HUNTER, SMITH, DAVIS, NORRIS & WADDEY, BEN C. DAVIS, EDWIN L. TREADWAY, Kingsport, for plaintiff in error.

JAMES W. MITCHELL, MITCHELL & GILLEY, Kingsport, for defendant in error.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

This proceeding was instituted by petitioner, Mrs. Evelyn Elliot Googe, under the Workmen's Compensation Act seeking benefits for the death of her husband, George Logan Googe, as a result of a heart attack while an employee of the International Printing Pressmen and Assistants' Union of North America. The defendant, The Travelers Insurance Company, and the insurance carrier of the Union, answered and denied petitioner's husband sustained an injury by accident arising out of his employment.

The trial judge filed a memorandum opinion in which he found the death of petitioner's husband arose out of and in the course of his employment and awarded petitioner a recovery.

Defendant has appealed to this Court and assigned four assignments of error. The first of which is: there is no material evidence of a causal connection between the employment of Deceased and his death by a heart attack.

In considering this assignment, we are limited in our review of the matter to ascertain if there is any material evidence in the record to support the finding of the trial judge. *Brown Shoe Company v. Reed*, 209 Tenn. 106, 350 S.W.2d 65 (1961); *City of Gallatin v. Anderson*, 209 Tenn. 392, 354 S.W.2d 84 (1962); *Ward v. Commercial Ins. Co.*, 213 Tenn. 100, 372 S.W.2d 292 (1963).

Petitioner's husband was employed by the Union as Secretary-Treasurer. He resided in Atlanta, Georgia, and his office was also in that city.

The Union owns and maintains Pressman's Home in Hawkins County, Tennessee

On September 17, 1961, he came to Pressman's home by train. He rented an apartment in the home. There is no proof in the record he was required by his employer to occupy this particular apartment while in Rogersville for a meeting of the Executive Board of the Union which was his purpose in coming to Pressman's Home.

He was furnished an office in another building a short distance from his apartment.

On September 24, 1961, his wife, petitioner, their daughter and granddaughter arrived by automobile at Pressman's Home at eight thirty P.M.

Petitioner is a registered nurse and stated that when she arrived her husband was sitting on the steps of the Home. He was slumped over and appeared to be "forlorn."

Because of his appearance she would not allow him to assist her in carrying the luggage to the apartment.

Thereafter, about nine thirty P.M., Deceased suffered pain in his chest and stomach which lasted about thirty minutes.

After the pain subsided, he went to the club room in the Home to a meeting of the Executive Board. It was necessary for him to descend two "huge" flights of steps from the apartment to the club room.

On Tuesday, September 26, 1961, when he came to the apartment for lunch, petitioner could observe he was tired and exhausted.

On Wednesday night about ten P.M., he suffered pain throughout his left side and arm. His breathing was short, although he would try to breathe deeply. This pain lasted for some time, but was over by midnight. He had been to lunch that day and worked at his office until five P.M. He had gone down to the club room to a meeting after he had dinner. He suffered pain in his side and arm after returning to the apartment.

On Thursday he went to his office in the morning. In midafternoon he called petitioner and told her he had made an appointment with Dr. E. M. Henderson for later in the afternoon.

Petitioner drove him to the Doctor's office in Rogersville. The Doctor made a routine examination of the patient. Mrs. Googe then drove her husband to their apartment and he rested for a while. Later he went down to the club room to meet with the other officers of the Union.

When he returned to the apartment, he watched television until a few minutes after eleven P.M. He then went to the bedroom and lay down.

Petitioner and her husband were planning on returning to their home in Atlanta the next morning after Deceased had finished some business.

Petitioner did some packing in preparation to leave the next morning. At about four A.M., on the morning of Friday, September 29, 1961, she noticed her husband was up and fully dressed. He had fallen asleep while he lay on the bed. However, he then undressed and went to bed.

Some time before eight A.M., petitioner awakened and touched her husband and he was "cold and clammy."

She covered him and went back to sleep. A few minutes before eight A.M., she heard a gulping noise. He complained of pain in his chest and was having difficulty in breathing. She called for a doctor and an ambulance. But Mr. Googe died before either arrived.

Dr. W. E. Bibbons arrived about twenty minutes after Mr. Googe died. From the history given him by petitioner and an examination of the body, he signed a death certificate which stated the death was due to myocardial infarction, acute and severe.

Dr. E. M. Henderson examined Deceased in the late afternoon of Thursday, September 28, 1961. He stated the patient's history included an episode of pain at his office on the previous afternoon and a reoccurrence the same night. From the history given to him by the patient and his examination, he diagnosed his condition to be a coronary artery disease or hardening of the heart arteries. He advised the patient to enter a hospital that night.

Dr. William P. Templeton in answer to a hypothetical question was of the opinion the stress and strain of his work could or might have precipitated his heart attack. On cross examination he stated it was not speculative to say there was a causal connection between Decedent's employment and his fatal heart attack from the history of his suffering and the conditions under which it was necessary for him to perform his duties while at Pressman's Home.

We have set forth the facts most favorable to petitioner. It is insisted for petitioner these facts, coupled with the testimony of Dr. Templeton, Decedent's employment could or might have brought on his fatal heart attack supports the finding of the trial judge there was a

causal connection between his employment and the fatal heart attack.

In support of this contention, emphasis is placed upon the fact it was necessary for Decedent to ascend and descend two flights of stairs to and from his apartment to his work. However, there is no proof in the record Deceased was required to occupy this particular apartment while attending the meeting of the Executive Board. Nor is there any proof he was subject to call to duty at all hours. Moreover, there is no evidence he sustained an incident of pains or symptoms of a heart condition while ascending and descending the stairs at any time.

While we recognize the rule an award may be predicated upon evidence from which a trier of the facts may reasonably infer a fatal heart attack did result from the employment which the experts say, ''could or might'' be the cause of the heart attack, yet we do not think the proof in this cause justifies such a finding.

The pains or symptoms of a heart condition were suffered on each occasion while Deceased was in his apartment with his family with the one exception of the episode of pain he related to Dr. Henderson as having occurred at his office on Wednesday afternoon. There is no evidence of what work, if any, he was doing at the time of this occurrence.

The undisputed evidence shows Decedent suffered no symptoms of a heart condition from midnight Wednesday until some time between four A.M., and eight A.M., Friday morning. He had been in bed for several hours prior to the fatal attack. At the time Decedent suffered the fatal heart attack, he was not engaged in any business of his employer. Nor is there any proof in the record

Deceased, during his stay at Pressman's Home, suffered any symptoms of a heart attack from any strain or exertion, normal or otherwise, while at work or going to or from his employment.

■ In order for an employee to recover under the Workmen's Compensation Act, he must prove he is an employee; that he sustained an accidental injury which has been defined as being an unusual, fortuitous, or unexpected happening, causing an injury which was accidental in character; and that such accident and injury grew out of and in the course of his employment. *Smith v. Tenn. Furn. Ind. Inc.*, 212 Tenn. 291, 369 S.W.2d 721 (1963).

■ The phrase "in the course of," refers to time and place, and "arising out of," to cause or origin; and an injury by accident to an employee is "in the course of" employment if it occurred while he was performing a duty he was employed to do; and it is an injury "arising out of" employment if caused by a hazard incident to such employment. *Shubert v. Steelman*, 214 Tenn. 102, 377 S.W.2d 940 (1964).

"[T]he mere manifestation of a heart condition without any proof of strain or overexertion at work does not show an accidental injury even though the development of the heart disease may have been hastened by the employee's usual and ordinary work." 99 C.J.S. Workmen's Compensation, sec. 177, page 604; *Hagewood v. E. I. Dupont*, 206 Tenn. 239, 332 S.W.2d 660 (1960).

In Larson's Workmen's Compensation Law, Section 38.83, page 565, it is said:

"There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes the employee while waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did happen; it happened by the inexorable march of the disease. It would have been accidental if the employee, by a miscalculation of his own strength inadvertently hastened his own death by exertion that caused the final breakdown."

■ We think, from the undisputed proof, that Deceased had left the place of his actual employment and had gone to his apartment for rest or association with his family and had retired when the fatal heart attack occurred, the relationship of master and servant was suspended and thus his injury did not arise out of or in the course of his employment, there being no proof of an accident or injury connected with his work to which the heart attack could be related.

Where the heart attack "is not brought on by the work which the employee was doing, or by some external happening in the course of the employment, it does not fall within the category of injury by accident arising out of employment." 58 Am.Jur., Workmen's Compensation, Section 255, page 256.

It is our opinion there is no material evidence from which a reasonable inference may be drawn that any exertion or strain, normal or otherwise, while at work aggravated or contributed to precipitating Deceased's fatal heart attack.

While this Court is bound by the findings of the trial judge on questions of fact, whenever there is any evidence to sustain the findings, it is not bound by the conclusions drawn by the trial judge from undisputed facts, and may reach a different conclusion from that of the trial court on the same findings of fact. *Wilson v. Van Buren County,* 196 Tenn. 487, 268 S.W.2d 363 (1954).

The cause is reversed and dismissed at the cost of the petitioner.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and CRESON, JUSTICES, concur.