**Mrs. Martha TREADWAY**

v.

**ASSOCIATED TRANSPORT, INC.**

**Civ. A. No. 6598.**

United States District Court
E. D. Tennessee, N. D.

June 20, 1969.

---

Harry J. Bryant, Knoxville, Tenn., for plaintiff.

Ben F. McAuley, Robert Ray, Poore, Cox, Baker, McAuley, Ray & Byrne, Knoxville, Tenn., for defendant.

## OPINION

ROBERT L. TAYLOR, Chief Judge.

Mrs. Martha Treadway filed this action to recover workmen's compensation benefits for the death of her husband, Lawrence Treadway, who was an employee of the defendant at the time of his death. Plaintiff claims that her husband's death arose out of and in the course of his employment for the defendant and that she is entitled to benefits under the Workmen's Compensation Law of Tennessee.

Defendant denies liability upon the theory that the death may have arisen out of decedent's employment but did not arise in the course of his employment. Defendant says death arising out of employment is not sufficient to establish liability. In that connection, the Supreme Court of Tennessee in the old case of Hendrix v. Franklin State Bank, 154 Tenn. 287, 290 S.W. 30 (1926), stated that the words "arising out of" and "in the course of employment" are not synonymous. The term "arising out of employment" refers to the origin of the cause of the injury, while "in the course of employment" refers to the time, place and circumstances.

The evidence and stipulations in this case show that the decedent drove a tractor-trailer rig from Knoxville, Tennessee to Indianapolis, Indiana with a load of candy starting from Knoxville on the 26th day of December, 1968 at 1:42 a. m., which was on Thursday. He arrived in Indianapolis at 3:15 p.m. on the same date, the trip having consumed approximately 13.6 hours. He was called in Indianapolis at 11:02 p. m. and reported at 12:56 a. m. on December 27, 1968 to drive from Indianapolis to Nashville, Tennessee. He arrived at Nashville at 8:06 a.m. on December 27, 1968 (Friday). It took almost 24 minutes to change units while in Nashville, and he left Nashville at 8:30 a.m. and arrived in Knoxville at 2:12 p.m. on the same day.

Mr. Krichbaum, terminal manager of the defendant, talked to the decedent for some time after his arrival, as did Mr. Charles Thomas, who was at that time an employee of the defendant. Mr. Thomas talked with the decedent at or near the cashier's office at defendant's terminal until about 2:30 p. m. The talk concerned a road map and lasted about fifteen or twenty minutes. Decedent "seemed like himself" and made no complaints. Decedent left defendant's terminal about 2:30 for his home. Mr. Krichbaum observed nothing unusual about him.

The record is silent about the distance from the defendant's terminal to decedent's home. Although the testimony is not clear as to the time decedent arrived at his home, Mrs. Treadway, his widow, was of the opinion that he ar-

rived between 2:00 and 2:30 p.m. If Mr. Thomas is correct in his testimony, the decedent arrived at his home at a later time than 2:30 p.m. as he did not leave the terminal until about that time.

When he arrived at his home, according to Mrs. Treadway, he was complaining about pain in his chest, and appeared completely exhausted. His face showed extreme distress. He held his hands and arms upward and complained of pain in the area of the heart. He took a couple of nitroglycerin pills, ate a sandwich and drank a glass of milk, and then retired to bed. He was in such pain that his wife sat on the side of his bed for sometime before going away. She left him with a smile on his face and eyes open.

About 10:30 p.m. of the same day, a call was received from a representative of the defendant requesting decedent to report to work at defendant's terminal. The call was from Mr. Pointer, dispatcher, and received by Mrs. Clark, daughter of decedent. Mrs. Clark went immediately to the room of her father and found him in a condition near death. She returned to the phone and told Mr. Pointer that her father was seriously sick and asked him to get in touch with Dr. Brooks and Mr. Maynard. He was unable to get in touch with Dr. Brooks; he did contact Mr. Maynard. In the meantime, Mr. Norman Wilkes came to the decedent's home in response to a call. He felt portions of decedent's body and found that he was warm under the arms but cold on the outside. His body was stiff and rigor mortis had set in.

Doctor Whittle, who is a general practitioner and who is presently the medical examiner for the defendant, had made three examinations of the decedent prior to his death, one in 1964, another in 1967 and the last on August 23, 1968. He found a systolic murmur in his heart on the last examination. His blood pressure was 130/60, which was normal. He knew that he had had previous heart attacks and that he was taking nitroglycerin. Dr. Whittle stated that 200 nitroglycerin pills a month is a high dosage.

Mrs. Treadway testified that her husband at one time had a regular run for the defendant, that while he had the regular run he took nitroglycerin pills but infrequently, not nearly at the rate of 200 pills a month; that after he took the extra run job, which was some time in October, 1968 and which he held until his death in December of that year, he averaged about 200 pills per month; that prior to taking over the new run he carried his nitroglycerin pills in a little bottle so long that they often crumbled into dust, thus indicating that he did not use them too frequently.

Doctor Whittle was frank enough to state that the stress and physical exertion of driving a tractor-trailer rig from Knoxville, Tennessee, to Indianapolis, Indiana, a distance of some 488 miles one way, would cause stress as well as fatigue to the body of a driver.

The stipulation indicates that there was rain and snow on one of the days that decedent drove. That would add stress to the driving. There is testimony to the effect that some of the tractors used by the defendant did not adequately pull the trailer. This testimony is too indefinite to be relevant to the issues.

The evidence shows, and the Court finds, that there was causal relationship between the fatal attack and the work of the decedent that was done on the trip from Knoxville to Indianapolis beginning on the 26th day of December, 1968 and ending the following day. His heart attack occurred immediately after his arrival at defendant's terminal in Knoxville or while he was on his way home from the terminal. He was in charge of the tractor-trailer rig 26 of the 36 hours consumed in the Knoxville-Indianapolis trip. This over-exertion, coupled with stress and strain, triggered the heart attack which resulted in his death.

The testimony of Mr. Krichbaum and Mr. Thomas indicates that he was not in

pain while in the terminal but the testimony of Mrs. Treadway shows beyond doubt that he was in serious pain when he arrived at his home.

There are numerous Tennessee cases dealing with heart attacks that resulted in death. In the case of Mason and Dixon Lines, Inc. v. Gregory, 206 Tenn. 525, 334 S.W.2d 939, an award was made in favor of the truck driver's widow but was reversed on the ground that the medical testimony to the effect that certain described working conditions could or might have hastened or accelerated or contributed to his death, was not alone sufficient to predicate a finding of a causal connection between the work and the death.

The Court in that case devoted considerable time to evidence questions relating to alleged statements made by the husband to the wife prior to his death which the Court held were incompetent as hearsay testimony.

In the case of Travelers Insurance Company v. Googe, 217 Tenn. 272, 397 S.W.2d 368, again the trial Court found for the widow of the deceased employee but on appeal the Supreme Court of Tennessee held that the fatal heart attack suffered by the employee who had left the place of employment [conference room in the building] and had gone to his apartment two floors above for rest or association with his family and who had retired for the night when the fatal heart attack occurred, did not arise out of and in the course of his employment, there being no proof of accident or injury connected with work to which heart attack could be related.

The Court noted that the mere manifestation of heart condition without any proof of strain or overexertion and work does not show accidental injury even though the development of the heart disease may have been hastened by the employee's usual and ordinary work. See Hagewood v. E. I. DuPont De Nemours and Co., 206 Tenn. 239, 332 S.W.2d 660.

In the opinion of the Court, the evidence in the present case shows that the strenuous work performed by the decedent was too much of a strain and aggravated his pre-existing heart disease. He had made previous trips under similar circumstances presumably from Knoxville to Indianapolis, but the proof does not show that such trips were made under the same or similar conditions as was the trip made in December, 1968. The evidence shows that decedent's work on the extra runs was much more strenuous than his work on the regular runs and this caused his heart condition to grow worse.

In the case of Bowman v. Smith-Built Homes, 221 Tenn. 102, 424 S.W.2d 801, the trial Court's finding in favor of the defendant was affirmed and it was noted that the mere manifestation of a heart condition without any proof of strain or over-exertion at work does not show an accidental injury even though the development of the heart disease may have been hastened by the employee's usual and ordinary work.

The holding of the Supreme Court in the case of Gluck Brothers, Inc. v. Breden, 215 Tenn. 587, at page 591, 387 S.W.2d 825, more nearly applies to the evidence in the present case than the cases previously noted. In that case, the Supreme Court quoted from the language in the case of Coleman v. Coker, 204 Tenn. 310, 321 S.W.2d 540, as follows:

"'[We are] committed to the proposition of law that an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced by *ordinary exertion and usual strain of the work.* (Emphasis supplied).

"'* * * if the physical activity and exertion of an employee's work aggravates a pre-existing heart condition, precipitates the fatal heart attack, and thus hastens his death, such death is the result of accident arising out of and in the course of the employment within the meaning of our

Workmen's Compensation Law. (Citing a number of cases)' "

The recent *Bowman* and *Googe* cases do not express a principle contrary to the *Gluck* decision, but rahter emphasize that (1) the work performed, whether it be ordinary or not, must cause a strain or over-exertion (2) which causes the heart attack. In *Bowman* and *Googe*, the work which allegedly caused the heart attack was not shown to have produced a physical or mental strain other than the usual exertion required in the ordinary processes of living whether at home or at work. The *Gregory* case illustrates the failure to prove a causal connection between employment caused strain and the heart attack. See also McMahan v. Traveler's Insurance Co., 114 F.Supp. 286 (E.D.Tenn.N.D., 1953). The proof is clear in the present case that the strenuous work of the decedent caused strain and over-exertion which aggravated his pre-existing heart condition, and in the opinion of the Court precipitated the fatal heart attack and thus hastened his death.

In the case of Kirby v. Dance Freight Lines, 226 F.Supp. 947, this Court held that the seizures occurred long after the day's work was finished and were not compensable. The last work performed was four months prior to the fatal attack.

In the case of Johnson v. Aetna Casualty & Surety Company, 174 F.Supp. 308, this Court held that where · deceased's heart trouble started before he left home for work but either began anew or continued to become worse after he reached work and worked for a time, and his body was in such depleted condition from the beginning of the attack that any exertion was detrimental to his condition, the work which he did even though not unusual caused or aggravated his heart condition which accelerated and resulted in his · death later in the working day entitled his dependent to benefits. This decision was affirmed by the Sixth Circuit in an opinion reported at 278 F.2d 200.

In the case of Sweat v. United States Fidelity & Guaranty Company, 169 F. Supp. 155, this Court held that the evidence established that the decedent had a diseased condition of the heart which was aggravated by his work in digging holes for telephone poles and that such work was the cause of his death. The death was compensable even though the heart attack came after decedent had ceased work for his lunch break.

In summary, the Court holds (1) that decedent's strenuous work in driving the tractor-trailer rig from Knoxville, Tennessee to Indianapolis, Indiana, and return by way of Nashville, Tennessee to Knoxville, placed unusual. stress on the decedent's pre-existing diseased heart and that this stress and strain triggered the heart attack which resulted in his death; (2) that plaintiff is entitled to workmen's compensation benefits under the Workmen's Compensation Law by reason of the fact that her husband's death arose out of and in the course of his employment as an employee of the defendant.

Prepare order in conformity with this memorandum.