KINGSPORT PRESS, INCORPORATED,
Appellant,

v.

Brenda VAN HUSS et al., Appellees.

Supreme Court of Tennessee.

March 7, 1977.

Richard M. Currie, Jr., Wilson, Worley, Gamble & Ward, Kingsport, for appellant.

Rowland E. Verran, Johnson City, for appellees.

## OPINION

COOPER, Chief Justice.

This is an appeal by the employer from an adverse judgment rendered in the Chancery Court of Sullivan County, Tennessee, in a workmen's compensation proceeding.

The appellee, Brenda Van Huss, filed a petition in behalf of herself and two minor children for benefits under the Workmen's Compensation Act for the death of her husband, Richard Van Huss. At the time of his death, Mr. Van Huss was employed as a maintenance mechanic by Kingsport Press, Inc. The chancellor, after a full hearing, held that the employee's death was compensable and that the petitioner was entitled to a decree for full death benefits. The employer contends, on appeal, that there is no material evidence that Mr. Van Huss's death was due to an injury by accident which arose out of and in the course of his employment.

The deceased employee had been a maintenance mechanic for more than ten years prior to his death. On January 2, 1975, Mr. Van Huss returned to work after having had a twelve day rest due to a combination of regular holidays and vacation days which he had taken. On reporting to work at 8:00 a. m., Mr. Van Huss informed his supervisor that he was having some chest pain and that the pain extended into his arm. The supervisor suggested that Mr. Van Huss seek medical treatment—a suggestion which Mr. Van Huss did not choose to take since previous complaints of such pain had been diagnosed as stomach trouble. The

supervisor then assigned Mr. Van Huss to help a fellow worker, Willie Gilliam, who was finishing lathe work on a roller core. Mr. Van Huss helped Mr. Gilliam turn the roller core, which weighed some ninety-seven pounds, end-for-end in the lathe. He also sharpened a few lathe tools for Mr. Gilliam, prior to the 9:15 a. m. break.

After the work break, Mr. Van Huss went to the Plant Medical Department and reported an increase in chest and arm pain. The nurse on duty at the plant sent Mr. Van Huss by ambulance to Holston Valley Community Hospital, where he was admitted to the coronary care unit, with a preliminary diagnosis of "myocardial infarction."

According to the medical history taken from Mr. Van Huss on admission to the hospital, he first noticed symptoms on January 1, 1975, "with a sharp pain in the chest and into his hands and he also noticed some labored respirations," which lasted about ten minutes. He had no more difficulty until about 9:00 a. m. on January 2, 1975, "when he began having pain again in the chest, arms, neck, jaws, and hands. This pain . . . did not ease up. [Also] he had a profuse perspiration and was short of breath."

Dr. W. P. Templeton, a cardiologist, examined Mr. Van Huss at about 6:00 p. m. and found all vital signs to be normal. At approximately 7:30 p. m., Mr. Van Huss went into cardiac arrest. Efforts to resuscitate him were unsuccessful and he was pronounced dead at 8:24 p. m. The cause of death, according to Dr. Templeton, was ventricular fibrillation which was the aftermath of an acute myocardial infarction.

Dr. Templeton testified that the myocardial infarction occurred the morning of January 2, 1975, about the time of Mr. Van Huss's admission to the hospital. The onset of pain on January 1, 1975, was described as "pilot angina," not an infarction, but a warning sign of an impending infarction.

As noted by the chancellor in his opinion, the cause of Mr. Van Huss's death was never in dispute, nor was it disputed that Mr. Van Huss had a myocardial infarction while at his job with Kingsport Press. The issue was whether there was any causal connection between the work being performed by Mr. Van Huss and the myocardial infarction, which proved to be fatal.

In *Lawrence County Highway Department v. J. W. Hardiman,* 531 S.W.2d 792 (Tenn.1975), it is pointed out that there is no iron-clad rule which calls for payment of benefits under the Workmen's Compensation Law where an employee suffers a heart attack while at work and for the denial of benefits where the employee suffers a heart attack while on the way home from work. The key to the recovery or denial of benefits is whether the heart attack is precipitated by the physical activity and exertion of the employee's work.

If so, an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced by ordinary exertion and usual strain of the work. *Lawrence County Highway Department v. Hardiman, supra; Coleman v. Coker,* 204 Tenn. 310, 321 S.W.2d 540 (1959). But where the heart attack is not brought on by the work which the employee was doing, or by some external happening in the course of the employment, the employee's death is not covered by the Workmen's Compensation Act. *See Chapman v. Aetna Casualty and Surety Co.,* 221 Tenn. 376, 426 S.W.2d 760 (1968); *Travelers Insurance Company v. Googe,* 217 Tenn. 272, 397 S.W.2d 368, 371 (1965).

And, as summed up in *R. E. Butts Co. v. Powell,* 225 Tenn. 119, 463 S.W.2d 707 (1971),

"The issue upon which cases of this nature are determined is factual; that is, whether the employee experienced the disabling injury which may have accelerated an existing disease while at work on the job. If so, this Court has held in numerous cases that the injury is accidental and compensable under our Workmen's Compensation statutes, even though the employee was not engaged in any spectacularly unusual strain or extraordinary exertion."

■ The legislature in enacting the compensation act expressly entrusted the trial court with the power to find the facts and when such facts are supported by any material evidence, even if this court thinks the evidence points otherwise, the trial court must be affirmed. *General Shale Prod. Corp. v. Casey,* 202 Tenn. 219, 303 S.W.2d 736 (1957).

■ Much of the medical testimony in this case is directed to showing that Mr. Van Huss was a prime target for a myocardial infarction, even though there was no question but that Mr. Van Huss's death was due to a myocardial infarction. This undoubtedly accounts for appellant's justified description of Dr. Templeton's testimony as "long, and sometimes confusing testimony deal[ing] with the functioning of the heart, the mechanism by which infarctions occur, and the various personality, physiological and environmental factors which may predispose one to have a heart attack."

According to Dr. Templeton, a myocardial infarction does not commonly occur in a person of Mr. Van Huss's age, thirty-four years, in the absence of one or more of three recognized predisposing causes of aging of coronary vessels—hypertension, diabetes and hyperlipemia. These conditions age the arteries prematurely and cause the arteries to become thickened, which reduces the nutrients going to the inner lining of the artery and often causes a denuded area, or ulcer. When this happens, a clot may form on the roughened surface of the arterial wall. If the clot breaks away from the wall, it can interfere with the supply to the myocardium and cause the portion which feeds off the obstructed artery to die. In short, if the clot breaks free a myocardial infarction may result.

Dr. Thompson was of the opinion that Mr. Van Huss had "one or two at least" of the predisposing causes of aging of coronary vessels.

"Well, I would certainly feel that if, if he, if he's diabetic, and I'm highly suspicious that he was, or hyperlipemia—he certain-

ly has a history of hypertension—that, well, were the factors. Those were one or two at least, or maybe even three of these factors were factors which, which caused the infarction at this age. Now, insofar as the work is concerned, I'm—again, it would depend on, on his reaction to work, * * * So again, as I say, it depends on what the effect the job has on the person individually; you see?"

Dr. Thompson also expressed the opinion that neither the work done by Mr. Van Huss as a maintenance mechanic nor the many hours of overtime worked had any bearing on the creation of the condition which led to the infarction. He did say, however, that once the condition had been created, exertion at the moment may contribute to cause the clot to break away and occlude the artery.

"Again, this, this, this is the question that has been raised—it [the clot] breaks away. Well, what caused it to break away? Well, just flapping in the breeze will do it. Now, exertion may contribute to it at the moment, but the process had been started. It is sort of like dropping a marble in a funnel. You could have—You have a funnel that is funneling water through it, and suddenly you drop a marble into it; boom—it just tampons (sic) off, tampons (sic) it off. Well, this little clot, if it breaks away—boom. It, because these arteries are narrowing down all the time, and bang, and it completely occludes this, and this is an infarction."

The chancellor concluded from "the total medical testimony" that there was "a causal connection between the final death of the deceased and his activities on the job." The specific activity referred to by the chancellor was the lifting and turning of the roller core on the lathe. This activity required two men to work in unison, or the use of a hoist, and is an activity calculated to cause "exertion" on the part of those doing the lifting and turning. We can not say that his finding is unsupported by material evidence.

Decree affirmed. Costs are adjudged against appellant, Kingsport Press, Incorporated.

FONES, HENRY, BROCK and HARBISON, JJ., concur.