Benjamin E. ALLEY, Appellee,

v.

CONSOLIDATION COAL
COMPANY, Appellant.

Supreme Court of Tennessee,
at Knoxville.

Oct. 21, 1985.

Thomas M. Cole, Knoxville, for appellant; Arnett, Draper & Hagood, of counsel.

William R. Stanifer, Tazewell, for appellee; Stanifer and Stanifer, of counsel.

## OPINION

COOPER, Chief Justice.

Consolidation Coal Company has appealed from the decree of the chancery court awarding plaintiff benefits under the Worker's Compensation Act. The chancellor based the award of benefits on his finding that the plaintiff, who worked in underground mines for forty-nine years, has pneumoconiosis and is totally and permanently disabled from performing his usual coal mine work or comparable work. Appellant, not being certain as to the applicable standard of appellate review since the passage of Chapter 393 of the Public Acts of 1985, argues both that there is no material evidence to support the chancellor's findings and that the evidence preponderates against his findings.

Chapter 393 of the Public Acts of 1985, which became effective July 1, 1985, amends the Tennessee Worker's Compensation Act in several material aspects, one of which is to replace the "material evidence" standard of appellate review with a new standard. Section 14 of Chapter 393 provides that on appeal:

Review of findings of fact by the trial court shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

There is nothing in Chapter 393 to indicate whether the new appellate standard of review is to be applied prospectively or retroactively. In contrast, section 1 of the legislation, which raises the "maximum weekly benefit" payable under the Act, specifically provides for a prospective application of that portion of the legislation.

This court has previously held that "[i]t is ... entirely possible for some portions of a public act to be prospective in operation and others to be retrospective. We are of the opinion, however, that the intention of the General Assembly to achieve that result should be clearly and unequivocally expressed." *Woods v. TRW, Inc.*, 557 S.W.2d 274, 276 (Tenn.1977). In the *Woods* case it was also noted that "[o]rdinarily, ..., statutes enacted by the General Assembly are given prospective operation and will be so construed unless a clear intention to the contrary is found in their provisions."

As heretofore noted, there is nothing in the Act itself that indicates any intention on the part of the legislature that Section 14, though it pertains to procedural matters, is to be applied retrospectively. Neither does the legislative history of the Act or tapes of legislative debates help in deciding the intent of the legislature. In fact, the debates show that the question of retrospective versus prospective application was never discussed. This leaves us in the position of having to follow basic rules of law in determining the intent of the legislature. Following our decision in the *Woods* case, *supra*, we conclude that it was the intent of the legislature that the new standard of appellate review be applied prospectively, *i.e.*, to worker's compensation causes of action which arise on and after July 1, 1985.

█ There is no question but that the cause of action now on appeal arose prior to July 1, 1985. Consequently, the appellate review will be under the material evidence standard, which precludes this court from considering the preponderance of the evidence. *Kingsport Press, Inc. v. Van Huss*, 547 S.W.2d 572 (Tenn.1977). *See also Gibson v. Consolidation Coal Co.*, 588 S.W.2d 290 (Tenn.1979).

The legislature in enacting the compensation act expressly entrusted the trial court with the power to find the facts and when such facts are supported by any material evidence, even if this court thinks the evidence points otherwise, the trial court must be affirmed.

*Kingsport Press, Inc. v. Van Huss, supra* at 574.

Under this standard of review, there is material evidence to show that the plaintiff worked underground at the face of the mine for forty-nine years and eight months, the last fourteen years of his employment being in mines operated by the defendant. The plaintiff ceased working in the mines in May, 1983, at a time when the defendant offered a retirement incentive. In November, 1983, a physician advised plaintiff that he had pneumoconiosis.

Plaintiff testified that during the last few years he worked in the mines, he was noticeably short of breath and could not perform all the tasks that fell to him as shift foreman. Specifically, he testified he was unable to wear the required self-rescue respirator, could not perform required cardio-pulmonary-resuscitation drills, could not participate in required emergency evacuation drills, and could not "walk out of the slope" 125 feet with other employees as he had to make several stops to catch his breath.

John Thomas Roberts, who worked in the mines with the plaintiff, testified that plaintiff had noticeable breathing problems.

As is often the case, the medical evidence as to disability, its cause and extent, is in conflict. Dr. Arnold R. Hudson, Jr. found no evidence of pneumoconiosis and no disability. Dr. William K. Rogers testified that plaintiff had "category 1 pneumoconiosis based upon some, mainly small P-sized nodules"[1] that showed on X-rays. Dr.

---

1. According to Dr. Rogers, the P-sized nodule is "the smallest nodule that's visible, so you go to P's, Q's, and R's."

Rogers also noted that the X-rays had other linear markings that could be T-sized nodules, but concluded the markings were not prominent enough for him to be absolutely sure. Dr. Rogers also found through a series of tests, that plaintiff had "roughly a twenty-five percent loss of pulmonary function," which he attributed to two factors:

[I]f you accept the fact that he has coal worker's pneumoconiosis, then that can be a factor, but an equally important factor is the fact that the patient is overweight.

As to plaintiff's ability to work in the mines, Dr. Rogers made the general observation that while he did not usually require patients who have category 1 pneumoconiosis to leave the mines, because of plaintiff's age and his inability to do some of the duties required of him in the mines, "there was no way [plaintiff] could continue to work and he should definitely quit." Dr. Roberts also stated that he required his patients with category 2 pneumoconiosis to get out of the mines.

Dr. Robert Matheny testified plaintiff "has pneumoconiosis 2/2, P,Q,S, and T of the University of Cincinnati Classification, and ... chronic obstructive pulmonary disease emphysema," with some loss of pulmonary function. He also expressed the opinion that plaintiff "has permanent and total occupational disability as a result of pneumoconiosis and his chronic obstructive pulmonary disease, emphysema. According to Dr. Matheny "coal mining is an established cause of emphysema," as is smoking. He attributed plaintiff's emphysema to a culmination of effects of both cigarette smoking and coal mining.

In making his findings of fact, the chancellor made specific reference to Dr. Matheny's diagnosis of pneumoconiosis 2/2 and chronic obstructive pulmonary disease. He also accepted Dr. Matheny's evaluation of plaintiff's disability to work in the mines. Defendant argues, in effect, that Dr. Matheny's testimony has no probative value and cannot support a finding that plaintiff is totally and permanently disabled from pneumoconiosis in that it is conflicting and is not the result of reasoned medical judgment based on medically acceptable clinical and laboratory diagnostic techniques. We do not find such a basic conflict in testimony of Dr. Matheny as to destroy its probative value, nor can we agree with the assertion that his testimony is not the result of reasoned medical judgment. Dr. Matheny, a former examiner for the Department of Labor in pneumoconiosis cases, took the same history, performed the same tests, and read the same X-rays as did the other physicians. He, along with Dr. Rogers found plaintiff to be suffering from pneumoconiosis, they differed only as to the degree and Dr. Rogers recognized that his X-rays contained linear markings that could be interpreted as showing the larger T-sized nodules in the lungs. Dr. Rogers also concurred that a worker with category 2 pneumoconiosis should not work in a mine. It is true that Dr. Matheny found plaintiff to be disabled from pneumoconiosis to a greater degree than did Dr. Rogers, which is to be expected since he found plaintiff's lungs to be more involved with pneumoconiosis than did Dr. Rogers.

Having concluded that Dr. Matheny's testimony is admissible and has probative value, we are of the opinion the chancellor's finding that plaintiff is totally and permanently disabled from coal miner's pneumoconiosis is supported by material evidence. The decree of the chancellor is affirmed, with costs to be paid by appellant. The case is hereby remanded to the trial court for the enforcement of its decree.

FONES, BROCK, HARBISON and DROWOTA, JJ., concur.