Inell WHITE, Plaintiff/Appellee,

v.

UNITED INDUSTRIAL SYNDICATE d/b/a KIMCO Auto Products and CNA Insurance Co., Defendants/Appellants.

Supreme Court of Tennessee,
at Jackson.

Dec. 28, 1987.

Walter Buford, Memphis, for plaintiff/appellee.

Katherine Carlyle, Frank S. Cantrell, Shields, Carlyle & Velander, Memphis, for defendants/appellants.

## OPINION

FONES, Justice.

In this workers' compensation action, the trial court found that plaintiff, Inell White, had suffered a sixty percent permanent partial disability to each arm as the result of a work-related injury. Plaintiff was awarded her medical expenses and permanent partial disability benefits. Defendant, United Industrial Syndicate, and its workers' compensation carrier, CNA Insurance Company, present two issues on this appeal. First, whether the trial court erred in its finding that this action was not barred by the statute of limitations. Second, whether the trial court erred in its finding that Plaintiff had met her burden of proof on the permanence of her injury.

Plaintiff is a sixty-two year old woman with an eighth grade education. Throughout her life, plaintiff has performed either farm or factory labor. According to her physician, Dr. Joseph Boals, plaintiff suffers from carpal tunnel syndrome bilaterally and post-surgical release with residual symptoms bilaterally. Dr. Boals testified that this condition was caused by the nature of the tasks plaintiff was required to perform for defendant. He further stated that plaintiff has a ten percent permanent partial disability of both upper extremities because of her condition.

Plaintiff began her employment with defendant in 1971, working until August 1985. Her job required her to fold cardboard boxes together, place water pumps into these boxes, and then place the boxes onto a pallet. Plaintiff made between 700 and 800 boxes per day. Plaintiff testified that she began to experience numbness in her hands, and pain from her palms into her arms about three years after she began

working for defendant. Later the pain moved into her shoulders. In 1981, plaintiff discussed the problems she was experiencing with her hands with her supervisors, who sent her to Dr. Larry B. Morrison and Dr. William L. Bourland. Dr. Morrison diagnosed plaintiff's condition as tendonitis and possible carpal tunnel syndrome in the left extremity and treated her condition with medication. In 1982, Dr. Bourland suggested that plaintiff have surgery on her left arm, however plaintiff elected not to do so. At all times during this period plaintiff continued to perform her job duties for defendant.

In 1985, the severity of the symptoms experienced by plaintiff increased, particularly the symptoms in plaintiff's right hand and arm. On 9 May 1985, plaintiff once again consulted with her supervisors and they sent her to Dr. James G. McClure. Dr. McClure diagnosed plaintiff's condition as bilateral carpal tunnel syndrome and performed surgery on plaintiff's hands. Plaintiff returned to work but continued to experience problems with her upper extremities. Plaintiff consulted her family physician who sent her to another orthopedic surgeon, Dr. Joseph Boals, III.

Dr. Boals first examined plaintiff on 13 August 1985. He diagnosed plaintiff's condition at that time as carpal tunnel release bilaterally with continued symptoms bilaterally. Because the previous surgery had not provided the expected relief, Dr. Boals recommended surgery on the right carpal tunnel. This surgery was subsequently performed by Dr. Boals. In September 1985, Dr. Boals informed plaintiff that her condition was permanent and work-related. Plaintiff testified that this was the first time she had been told that her condition was permanent and work-related.

Plaintiff filed suit seeking workers' compensation benefits on 17 January 1986. The trial court found that plaintiff was injured on 8 May 1985. The trial court also found that plaintiff was not aware that her condition was permanent and work-related until she was so informed by Dr. Boals in September 1985. As plaintiff's action was filed within one year of these dates, the court found that plaintiff's cause of action was not barred by the statute of limitations. The court then found that plaintiff had sustained a sixty percent permanent partial disability to her right and left arms. Plaintiff was awarded permanent disability benefits and her medical expenses.

As this cause of action arose before 1 July 1985, review by this Court on appeal is limited by the material evidence rule. *Alley v. Consolidation Coal Co.*, 699 S.W.2d 147 (Tenn.1985).

The first issue this Court will address is whether the trial court erred in its finding that plaintiff's cause of action was not barred by the statute of limitations.

In Tennessee, the limitations period for workers' compensation actions is one year after the occurrence of the injury. T.C.A. § 50–6–224(1). However, it is well settled that the statute of limitations is tolled until the employee discovers or in the exercise of reasonable care and diligence should have discovered that he has sustained a compensable injury. *See Hawkins v. Consolidated Aluminum Corp.*, 742 S.W.2d 253, 254 (Tenn.1987); *Hibner v. St. Paul Mercury Insurance Co.*, 619 S.W.2d 109, 110–11 (Tenn.1981). We cannot say that the trial court's finding that plaintiff was not aware until September 1985 that she had suffered a permanent, work-related, and therefore compensable injury is not supported by material evidence. *See Smith v. Smith's Transfer Corp.*, 735 S.W.2d 221, 223–24 (Tenn.1987); *Jones v. Home Indemnity Insurance Co.*, 679 S.W.2d 445 (Tenn.1984); *Hibner v. St. Paul Mercury Insurance Co., supra* at 110–11.

The next issue is whether the trial court correctly determined that plaintiff met her burden of proof on the permanency of her disability. Defendant asserts that although plaintiff presented the testimony of an expert on the permanency of her disability, this expert's testimony was inadmissible because it did not comply with T.C.A. § 50–6–204(d)(3). Therefore, defendant contends that plaintiff failed to satisfy her burden of proof on the permanency of her condition.

Prior to its amendment in 1986, T.C.A. § 50–6–204(d)(3) stated:

> To provide uniformity and fairness for all parties, any medical report prepared by a physician furnishing medical treatment to a claimant shall use the American Medical Association Guides to the Evaluation of Permanent Impairment, (American Medical Association 1977), or subsequent editions, the most recent edition to be that utilized in determining the degree of anatomical impairment. A practitioner shall be required to give an impairment rating based on the AMA guide.[1]

In *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987), this Court held that the trial court committed error by admitting the testimony of a chiropractor on permanent disability because that testimony did not conform to the requirements of T.C.A. § 50–6–204(d)(3). *Id.* at 317. In *Humphrey*, the chiropractor's testimony on the permanency of the employee's disability was based upon the 1971 edition of the AMA guide. *Id.* We remanded that case so that further testimony which conformed to the statutory requirements could be produced by either party. *Id.* at 318. We also stated that the chiropractor's testimony on the employee's permanent disability should be stricken unless on remand the testimony conformed to the statutory requirements.

In the present case, Dr. Boals did not state whether his conclusion on the extent of plaintiff's disability was based upon the AMA guidelines. He simply stated that his opinion was based upon a reasonable degree of medical certainty. Under the *Humphrey* decision, this testimony would not satisfy the statutory requirements and would therefore be inadmissible.

However, the present case is distinguishable from *Humphrey*. In *Humphrey*, the plaintiff's accident occurred on 24 September 1985. As the effective date of T.C.A. § 50–6–204(d)(3) was 1 July 1985, that statute clearly applied to the *Humphrey* case.

In the present case, the trial court determined that plaintiff was injured on 8 May 1985. Thus, plaintiff's cause of action arose almost two months before the effective date of the statute. Therefore, unless T.C.A. § 50–6–204(d)(3) is retrospective in operation, neither the statute nor the decision of this Court in *Humphrey* control the present case.

T.C.A. § 50–6–204(d)(3) was added to the Tennessee Workers' Compensation Act by section 3 of chapter 393 of the Public Acts of 1985. This Court recently addressed the retrospective application of another section of chapter 393 of the Public Acts of 1985 in *Alley v. Consolidation Coal Co., supra. Alley* addressed section 14 at chapter 393 which altered the standard of review by this Court for workers' compensation cases. We noted that while nothing in chapter 393 indicated whether section 14 was to be applied prospectively or retroactively, the Act specifically provided for the prospective application of section 1. *Id.* at 148. We then stated:

> This court has previously held that "[i]t is ... entirely possible for some portions of a public act to be prospective in operation and others to be retrospective. We are of the opinion, however, that the intention of the General Assembly to achieve that result should be clearly and unequivocally expressed." *Woods v. TRW, Inc.*, 557 S.W.2d 274, 276 (Tenn. 1977). In the *Woods* case it was also noted that "[o]rdinarily, ..., statutes enacted by the General Assembly are given prospective operation and will be so construed unless a clear intention to the contrary is found in their provisions."

As heretofore noted, there is nothing in the Act itself that indicates any intention on the part of the legislature that Section 14, though it pertains to procedural matters, is to be applied retrospectively. Neither does the legislative history of the Act or tapes of legislative debates help in deciding the intent of the legislature. In fact, the debates show

---

1. This provision was subsequently amended to also allow the use of the Manual for Orthopedic Surgeons in Evaluation Permanent Physical Impairment. (American Academy of Orthopedic Surgeons). T.C.A. § 50–6–204(d)(3) (Supp. 1987). This amendment only applies to covered injuries which occurred on or after 1 July 1986. 1986 Tenn.Pub. Act, ch. 792.

that the question of retrospective versus prospective application was never discussed. This leaves us in the position of having to follow basic rules of law in determining the intent of the legislature. *Id.* We then determined that the intent of the legislature was for section 14 to be applied prospectively. *Id.*

The reasons given in *Alley* for applying section 14 prospectively are equally applicable to section 3. Therefore, we hold that it was the intent of the legislature that the new standard for the admission of expert medical testimony on permanent disability be applied prospectively. Thus, T.C.A. § 50–6–204(d)(3) applies only to causes of action that arise on or after 1 July 1985. As this cause of action arose prior to 1 July 1985, the admission of the medical testimony on permanent disability was not erroneous.

The judgment of the trial court is affirmed. Costs are adjudged against defendants. .

HARBISON, C.J., and COOPER, DROWCTA and O'BRIEN, JJ., concur.