Gluck Brothers, Inc., Plaintiff in Error,

*v.*

Hobert Breeden, Defendant in Error.

387 S.W.2d 825.

(*Knoxville,* September Term, 1964.)

Opinion filed March 4, 1965.

W. H. INMAN, TAYLOR & INMAN, Morristown, for plaintiff in error.

JAMES K. MILLER, MILLER & NOE, Morristown, for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is a Workmen's Compensation case. The employee, defendant in error, was found to be totally and permanently disabled as the result of a heart attack, and was awarded benefits accordingly. From the unfavorable holding of the trial judge in the court below, the employer, plaintiff in error has perfected his appeal to this Court.

Two assignments of error are made, viz.:

(1) There is no material evidence to support the judgment of the court; and (2) The petitioner failed to

prove the notice required by statute, such lack of notice conclusively prejudicing the defendant's rights.

The facts are that the employee is a totally illiterate man who has worked as a laborer all of his life and has been in the employment of the defendant for approximately twelve years. He worked as a furniture assembler, particularly dressers and chests, and his work required him to lift a ten or twelve pound panel over his head, and to reach over his head with a two or three pound rubber hammer and "knock it down in them holes."

On Monday, November 11, 1963, while at work, about 1:30 P.M., he suffered severe chest pains, but continued to work for the remainder of the day. The pains continued throughout the night, but he returned to work the following day. The pains continued and the employee, according to his testimony, kept getting weaker and weaker, whereupon at about 4:30 P.M. he sat down in the rest room. "I was sick enough to die, it seemed like my breath was cutting off."

After work he went to his car and "a bad spell hit me again," and he fell into the car where he lay for some time before he was able to drive home. The discomfort continued all night and on Wednesday morning he was taken to Dr. James W. Richardson, who placed him in the hospital and treated him for a heart attack.

The plaintiff's wife gave essentially the same testimony concerning the pains and illness of her husband. Additionally, she testified that about two and one-half weeks afterwards she contacted the plant nurse and told her that her husband had suffered a heart attack. She also related an incident wherein Jerry Allen, the foreman at Gluck Brothers, came to bring her husband's last pay

check, and she stated that she told him at that time that her husband had suffered a heart attack.

The deposition of Dr. James W. Richardson the attending physician, was then introduced on behalf of the plaintiff. He testified that the plaintiff had suffered a myocardial infarction, and the onset of the attack was somewhere around the time the plaintiff first had the pains.

"Q. Now, Doctor, you had ascertained the type of employment that Mr. Breeden did, would you tell us whether or not, in your opinion, if you can assume that the things that Mr. Breeden did involved lifting boards weighing approximately 10 pounds over his head, and then taking a hammer and reaching over his head and hammering the boards, in your professional opinion, would or not that sort of activity aggravate, or initiate, or accelerate a heart attack such as Mr. Breeden had?

"A. I would say it would probably accelerate it. I'd say at the time the process was going on in him any kind of physical activity at all would aggravate or accelerate it.

"Under cross-examination by defense counsel:

"Q. Doctor, let's just get right down to it, from a medical standpoint, in your opinion is there any causal connection between this man's employment and his myocardial infarction?

"A. Well, let's put it this way, I don't think that because he happened to be working for that company made him any more liable to have a heart attack than, say, if he had been working for the Southern Railway. I just say that at the time he had his attack he was working when the thing started in progress as best as

I can determine from the history he stated to me. As he stated, he started having these pains in his arms and chest 2 days prior to the time I saw him—that was on Monday, and they gradually worsened and he worsened, and even after they started on Monday he worked a full day, and then he worked another full day on Tuesday. It may be that if he had stopped work at dinner time on Monday, they may have gone away, and they might not have come back if he had stayed off for a week or so, I don't know. *All I'm saying is that he was at work and the activity he was performing accelerated or aggravated the progress that began there."* (Emphasis supplied).

The first question raised here is whether the evidence supports the holding that Mr. Breeden's heart attack arose out of his employment.

In discussing the causal relationship between employment and heart attacks, this Court said in *Coleman v. Coker*, 204 Tenn. 310, 321 S.W.2d 540 (1959):

"[We are] committed to the proposition of law that an employee who dies in the course of his employment as a result of a heart attack, although suffering from a previous heart disease, is covered under the Workmen's Compensation Act even if the result was produced by *ordinary exertion and usual strain of the work.* (Emphasis supplied).

"* * * if the physical activity and exertion of an employee's work aggravates a pre-existing heart condition, precipitates the fatal heart attack, and thus hastens his death, such death is the result of accident arising out of and in the course of the employment within the meaning of our Workmen's Compensation Law. *Pat-*

*terson Transfer Co. v. Lewis,* 195 Tenn. 474, 260 S.W. 2d 182; *Heron v. Girdley,* 198 Tenn. 110, 277 S.W.2d 402; *Cambria Coal Co. v. Ault,* 166 Tenn. 567, 64 S.W.2d 18; *Lucey Boiler & Mfg. Corp. v. Hicks,* 188 Tenn. 700, 222 S.W.2d 19." 204 Tenn. at 312-313, 321 S.W.2d at 541.

Mr. Justice Swepston, writing for the Court, in *Nashville Pure Milk Co. v. Rychen,* 204 Tenn. 575, 322 S.W.2d 432 (1958), said:

"Counsel for appellant seems to have pitched his case on the idea that there must have been some unusual occurrence or activity or exertion beyond the scope of the deceased's ordinary employment activities in order for the death to be compensable. We think this is a misapprehension of our cases. The question is succinctly stated in *Patterson Transfer Co. v. Lewis,* 195 Tenn. 474, 478, 260 S.W.2d 182, 184, as follows:

" 'If an ordinary exertion or usual strain produces an unusual result, is the resulting injury by accident?' "

"The answer immediately follows:

" 'It is now well established that *ordinary and usual exertion at work resulting in injuries, is compensable.'* "

The recent case of *Ward v. Commercial Ins. Co.,* 213 Tenn. 100, 372 S.W.2d 292 (1963), approved the above language and stated that those cases resolve the question of law as to whether a death resulting from a heart attack in the course of employment *can be compensable* as arising out of the employment. The Court further stated:

"These cases and many more also make it clear that in each case there is a question of fact which must be

resolved by the trial court, to-wit: whether there actually was a causal connection between the heart attack and the employment." 213 Tenn. at 110, 372 S.W.2d at 297.

■ Thus, since the question is basically one of fact, it is necessary that we take note of the scope of review of this Court as concerns the facts found in the court below. It is settled law that we are to review the record only to determine if the trial judge's decision is supported by any material evidence.

In *White v. Whiteway Pharmacy, Inc.*, 210 Tenn. 449, 454, 360 S.W.2d 12, 15 (1962), this Court stated that in a workmen's compensation case:

"(F)indings of fact of the trial court will not be disturbed on appeal if supported by any material evidence and this is true even though the preponderance of the evidence is against the finding of the trial court. *Vester Gas Range & Mfg. Co. v. Leonard*, 148 Tenn. 665, 257 S.W. 395; *Brady v. Reed*, 186 Tenn. 556, 212 S.W.2d 378; *Graybeal v. Smith*, 189 Tenn. 412, 225 S.W.2d 556."

■ Our review in the instant case is, therefore, limited to an examination of the record to see if there is any material evidence to support the trial judge's finding that there was a causal connection between Mr. Breeden's employment and his fatal heart attack. We think that the medical testimony in the record, without a doubt, is material evidence sufficient to uphold the verdict.

In discussing the value of medical testimony and medical opinion, 2 Larsen, Workmen's Compensation sec. 322 (1961), reads:

"It is a common experience of compensation and personal injury lawyers to find that the more distinguished

a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that a sledge hammer blow on claimant's head might well have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements of opinions on such matters as causation.''

In *Lynch v. La Rue*, 198 Tenn. 101, 278 S.W.2d 85 (1955), we discussed the value of medical testimony and concluded as follows:

''It is elementary that an award cannot be predicated solely upon the testimony of medical experts who are not willing to go any further than to say that it 'is possible' or 'could be' that there is a causal connection between the accident and the injury for which compensation is sought. However, such testimony is not entirely without value if there be other evidence from which the trial judge may reasonably infer that the injury did result from the accident that the experts say 'could be' the cause of the injury.'' 198 Tenn. at 104, 278 S.W.2d at 86.

In re-examining the medical testimony in this case we are of the opinion that the doctor's statements indicate at least a degree of certainty that the heart attack, the aggravation or acceleration of it, was caused by the employment. Specifically, we point to the language such as:

''I'd say * * * any kind of physical activity at all would aggravate or accelerate it.

\* \* \* \* \* \*

*"All I'm saying is that he was at work and the activity he was performing accelerated or aggravated the process that began there."* (Emphasis supplied).

In addition to this medical testimony is the proof that the plaintiff's work required an appreciable amount of physical activity, i. e. lifting, hammering, etc., and, also, the fact that the plaintiff's condition worsened as he continued working clearly shows that the work accelerated or aggravated the attack.

We think that the above facts constitute sufficient material evidence to make it mandatory that we affirm the judgment of the trial court.

The case *sub judice* is easily distinguished from the recent case of *Cas Walker's Cash Stores, Inc. v. Livesay,* 215 Tenn. 306, 385 S.W.2d 745 (opinion for publication released January 6, 1965; petition to rehear denied contemporaneously with the release of this opinion).

In that case the evidence showed that the employee appeared normal when he went to work the morning of his attack; that when he left for home and lunch that day he appeared normal; that after eating his lunch and mowing a small part of his yard, he left to return to his work; that when he returned to the store where he worked he was pale and sweating; and, that he went back to lie down ten to fifteen minutes after returning to the store.

Medical testimony was only that the decedent's employment "could or might" have contributed to the attack. At the same time, the other evidence, noted above, in no way supported an inference of a causal connection between the employment and the fatal heart attack. As a matter of fact, it showed the origin of the attack followed

exertion in mowing the lawn and the onset occurred as he returned to his employment.

As stated previously, in the instant case medical testimony positively links the heart attack with the stress and strain of the plaintiff's work. Secondly, the other evidence supports or gives rise to an inference that the employment precipitated the heart attack. Both of these elements are lacking in the Cas Walker's Cash Stores case. The first assignment is, therefore, overruled.

The second assignment of error is that the petitioner failed to prove the notice required by Statute (T.C.A. sec. 50-1001), and such lack of notice conclusively prejudiced the defendant's rights. Plaintiff admits that he gave no written notice of his injury to the employer, however, he insists that the employer had actual notice.

T.C.A. sec. 50-1001 requires an employee to give written notice of the accident and injury within thirty days on the penalty of having his petition dismissed. The courts have relieved an employee from the burden of written notice on two grounds, namely: (1) waiver, based upon the conduct of the employer, or his representatives in recognition of the liability; and (2) excuse, based upon various grounds of inability, or faultless omission of the employee. Knowledge of the accident and injury on the part of the employer and lack of prejudice are elements considered by the court as affecting the reasonableness of the excuse made, or the justness of the application of the doctrine of waiver.

Defendant cites the case of *Aluminum Co. of America v. Rogers,* 211 Tenn. 187, 364 S.W.2d 358 (1963), as authority for their position. That case held that a guard, who allegedly sustained an accidental injury (pain struck

him while attempting to close a window), did no justify notice requirements when he merely told employer's desk sergeant that he was sick at his stomach and his arms and hips were hurting, nor did these statements give employer notice of injury which resulted in his death due to aggravation of a pre-existing diabetic condition.

A second case relied upon by defendant is *York v. Federal Chemical Co., et al.,* 188 Tenn. 63, 216 S.W.2d 725 (1949). In that case the court dismissed a petition for lack of notice since employee, who died of an infected thumb, had failed to report the infected condition, although he had reported the initial injury. The rationale was that the employer was prejudiced, owing to the lack of notice, because he was deprived of the privilege of securing proper medical attention in time, to treat the infected thumb and thereby, in all probability, save the life of the employee.

On the other hand, it is the established law of this State that while knowledge of a fellow workman of the injury cannot be imputed to the employer, if an employee's superior is given notice of the accident and injury, this constitutes notice to the employer. *Hotel Claridge Co. v. Blank,* 169 Tenn. 575, 89 S.W.2d 758 (1936); *Tennessee Products Corp. v. Gravitt,* 182 Tenn. 54, 184 S.W.2d 164 (1945); *Patterson v. Bessemer Coal, Iron & Land Co.,* D.C., 192 F.Supp. 805 (1961).

In the case now before us, there is uncontradicted testimony that the plant foreman visited Breeden in the hospital and was informed at that time that Breeden had suffered a heart attack while at work. The foreman had brought Breeden's last pay check to him. Also, there is testimony that Mrs. Breeden reported that her husband

had suffered a heart attack to the plant nurse while plaintiff was still in the hospital.

We think that these facts clearly demonstrate that the employer had notice through actual knowledge of the injury of Breeden. Notice to the foreman or the plant nurse of the accident and the injury is notice to the employer. Therefore, the second assignment is not well taken and is overruled.

The judgment is affirmed and the case is remanded to the trial court for the enforcement of this opinion.

BURNETT, CHIEF JUSTICE, and DYER, HOLMES and CHATTIN, JUSTICES, concur.