Gluck Brothers, Inc., Plaintiff in Error,

*v.*

Emory H. Pollard, Defendant in Error.

426 S.W.2d 763.

(*Knoxville*, September Term, 1967.)

Opinion filed March 29, 1968.

Joe A. Tilson, Morristown, for plaintiff in error.

Sidney W. Gilreath, Knoxville, for defendant in error.

MR. JUSTICE CRESON delivered the opinion of the Court.

This is an appeal by the employer in a workmen's compensation proceeding, from an adverse judgment rendered in the Circuit Court of Hamblen County, Tennessee. This appeal involves three aspects of the Workmen's Compensation Act: (1) Causal connection between the employment and the ultimate condition of petitioner, T.C.A. sec. 50-902(d); (2) Statute of limitations, T.C.A. sec. 50-1003; and (3) Notice, T.C.A. sec. 50-1001.

The parties will be referred to herein as they appeared in the lower court; that is, plaintiff in error Gluck Brothers, Inc. as defendant, and defendant in error Emory H. Pollard as petitioner.

It appears from the record that the petitioner had been employed by the defendant since at least October, 1961.

On December 15, 1962, while performing his duties of firing a boiler, the boiler backfired. He sustained burns to his eyes, lids, lashes, and surrounding tissues. The defendant employer had him taken to a Knoxville ophthalmologist. An examination was made and treatment administered. The ophthalmologist saw the petitioner on two subsequent occasions and released him to return to work on December 26, 1962. The petitioner did return to work on December 28, 1962, and worked continually for the defendant until September 6, 1965.

The petitioner testified that he had continuous headaches from the date of the accident to the present. On September 13, 1965, the petitioner's doctor referred him to a Knoxville neurologist; because of the former's inability to ascertain the cause of headaches. Petitioner entered the University of Tennessee Hospital for a week, where he was examined by a neurologist, and others on the hospital staff. The neurologist could find no organic cause for the headaches, and recommended that the petitioner be institutionalized in the state mental hospital.

The petitioner entered the Eastern State Hospital on October 26, 1965. He underwent a complete examination, and his mental condition was diagnosed as "schizophrenic reaction, chronic undifferentiated type." That same day, the petitioner's employment was formally terminated by the defendant. Petitioner remained in Eastern State Hospital until March 23, 1966. He was readmitted on May 20, 1966, and was finally discharged on July 1, 1966. The present suit was filed on October 14, 1966.

There is no question but that the accident and injuries to the eyes were within the scope of workmen's compensa-

tion coverage; nor is there any doubt of the employer's notice of this and assumption of treatment. The defendant's primary contention is that there is no material evidence to causally connect the psychiatric condition with the 1962 accident to justify a recovery under the Workmen's Compensation statutes for the mental condition.

■ The trial judge held that the ultimate disabling psychiatric condition was causally related to the 1962 boiler explosion. Our review of the case is limited by statute to a determination of whether or not findings of the trial court are supported by any material evidence. T.C.A. sec. 50-1018 and cases cited.

A licensed psychiatrist examined the petitioner, on his own behalf, on March 4, 1967. Based on the findings made from her examination, she testified that (1) the boiler explosion produced the trauma which caused the continuous psychological headaches; (2) the petitioner was somewhat mentally retarded and possessed a schizoid personality, which grew into a full-blown psychosis as a result of the trauma of the boiler accident and the subsequent psychological headaches; and (3) the psychosis disabled the petitioner and prevented him from continuing in his normal line of work, and presently continues to do so.

■ The defendant introduced medical testimony to the effect that there was no causal connection between the boiler incident and the subsequent mental deterioration. It is clear that the defendant and its counsel feel much aggrieved by the finding of the trial court in this regard. If it would be of any consequence, we would say, without hesitancy, that we disagree with the factual conclusion

reached by the trial judge. However, under the law of this State, it makes no difference whether or not, as trial judges, we would have decided the case differently from the result reached by the trial judge who did try the case. We simply cannot say that there is no material evidence that the casualty which occurred did either cause, contribute to, or exacerbate the condition in which the petitioner is shown to be at or prior to the filing of suit in this cause. This, even though we are convinced that the testimony of the psychiatrist for the petitioner does little credit to the idea that the practice of psychiatry is now recognized to embody the knowledge and application of medical science.

In addition to the primary contention, the defendant objected to the trial court's (1) allowing the petitioner to testify, and (2) accepting the psychiatrist's testimony, admittedly based primarily on an interview with the petitioner. These assignments of error raise the issue of whether or not the petitioner was incompetent to testify or to relate history and information to his psychiatrist because of his defective mental condition. This Court considered the basics of this question in *Turner v. Bell* (1955) 198 Tenn. 232, 279 S.W.2d 71, and held:

"(15) Although a person has been declared insane this does not conclusively render such person incompetent as a witness. 70 C.J. 96, Witnesses, Sec. 123; 58 Am. Jur. p. 92, Sec. 118, p. 94, Witnesses, Sec. 121; Wigmore on Evidence, 3d Ed., Vol. II, Sec. 492, p. 583.

The general rule as laid down in 58 Am.Jur. p. 92, Sec. 118, is as follows:

'118. Generally—Owing to imperfect understanding of the nature of insanity, its many forms and varying

effects, it was considered at common law that every insane person was wholly and absolutely non compos mentis and incompetent to testify. And the statement was broadly made in a number of American cases, most of which were decided in the first half of the nineteenth century, that insane persons and idiots were not competent witnesses. But in more recent times, the courts, keeping pace with the progress of science, have greatly relaxed the rigor of that rule and now agree that a lunatic or a person affected with insanity is competent as a witness if, at the time he is offered as a witness, he has sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue. Otherwise, he is not competent. In other words, a lunatic, from the condition of his mind, may not be a competent witness, but his incompetency on that ground, the same as want of capacity from infancy or other cause, must be determined by the court.'

This rule is not changed by the fact that such a person has been adjudged incompetent and confined in an institution for the insane. 58 Am.Jur. Sec. 121, p. 94.''

■ Mental unsoundness of a witness goes to the credibility of his testimony. If not deemed credible, it is to be rejected. This, of course, is a question to be resolved by the trier of fact. The same test is applied to the weight to be given a conclusion based on the testimony of a mentally deranged patient.

■ The defendant, by two assignments of error, objects to two statements of the trial judge in his

memorandum opinion. In one instance, the judge referred to the burns suffered in the 1962 accident as "severe", while the treating physician testified that they were "mild". In another statement, the trial judge left the inference that the petitioner had received treatment for his eyes after he was released by the ophthalmologist. We have reviewed the record in this regard and are satisfied that these instances constituted only misstatements by the trial judge which are not prejudicially harmful to the defendant in any way we can reach.

The defendant next asserts that the petitioner is precluded from recovery for failure to give the proper notice required by the Workmen's Compensation statute, T.C.A. sec. 50-1001. Petitioner concedes that the defendant received no written notice until served with process on October 20, 1966, but urges that he was excused from giving notice because of his mental condition. The trial judge found that the defendant had notice of the 1962 accident and that such notice was of a continuing nature.

The Legislature placed an exception into the notice requirements by giving the trial judge the authority to relieve the notice requirement where a reasonable excuse for failure to give such notice was shown to his satisfaction. In determining whether the employee falls within the exception, our courts consider: (1) Actual knowledge. *Kingsport Silk Mills v. Cox* (1930) 161 Tenn. 470, 33 S.W.2d 90; *Ward v. North American Rayon Corp.* (1963) 211 Tenn. 535, 366 S.W.2d 134; *Gluck Brothers, Inc. v. Breeden* (1965) 215 Tenn. 587, 387 S.W. 2d 825. (2) Lack of prejudice. *Lampley v. St. Paul Mercury Indemnity Co.* (1957) 201 Tenn. 458, 300 S.W.2d 876; *Aluminum Co. of America v. Rogers* (1962) 211

Tenn. 187, 364 S.W.2d 358. (3) Capacity of employee to timely notify. *Gluck Brothers, Inc. v. Breeden,* supra; *Brown Shoe Co. v. Reed* (1961) 209 Tenn. 106, 350 S.W.2d 65; *Marshall Constr. Co. v. Russell* (1931) 163 Tenn. 410, 43 S.W.2d 208.

 Since (1) the defendant had actual knowledge of the accident which caused the injury in this case, (2) there was no showing of prejudice to the defendant, and (3) the employee was suffering from an impaired capacity to notify, this Court cannot quarrel with the trial court's decision that the notice requirements were not violated.

 The defendant alleges that the petitioner did not file suit within the one year limitation fixed by the Workmen's Compensation Act. T.C.A. sec. 50-1003. The defendant recognizes that the period of limitation commences when the injury manifests itself and not exclusively on the date of the accident. *Imperial Shirt Corporation v. Jenkins* (1966) 217 Tenn. 602, 399 S.W.2d 757. The defendant, however, urges that the mental condition became apparent in September of 1965; and consequently, the suit filed on October 14, 1966 was beyond the one year period of limitation. The petitioner puts the date of manifestation on October 26, 1965. This was the date that the Eastern State Hospital diagnosis was made. The trial judge agreed that the commencement of the limitation period began on October 26, 1965. This date marked the first fully accurate diagnosis of petitioner's condition, and also was the time of commencement of the petitioner's long-term hospitalization in the State mental hospital. We cannot say that the trial judge erred in this regard.

It results from what has been stated above that all assignments of error are overruled. The judgment of the lower court is affirmed, with the costs of this appeal assessed against the plaintiff in error.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.