WILLIAM FRED BROWN, Petitioner-Appellee,

*v.*

CONSOLIDATION COAL COMPANY and CHARLES WORLEY,
Tennessee State Treasurer, Defendants-Appellants.

451 S.W.2d 684.

(*Knoxville,* September Term, 1969.)

Opinion filed March 16, 1970.

PAUL E. PARKER, Knoxville, of counsel, O'NEIL, PARKER, WILLIAMSON & JARVIS, Knoxville, for petitioner-appellee.

W. KEITH McCORD, Knoxville, of counsel, EGERTON, McAFEE, ARMISTEAD & DAVIS, Knoxville, for defendants-appellants.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

This is a Workmen's Compensation appeal from a decree awarding twenty per cent permanent disability against the Second Injury Fund of which the State Treasurer is custodian and eighty per cent permanent disability from the occupational disease, silicosis, against Consolidation. Only Consolidation has appealed. So inquiry in this Court is limited to the correctness of the decree against Consolidation alone. Although Consolidation has assigned several errors only one has merit and that is, that, although petitioner-employee Brown does have the occupational disease of silicosis, the disease is not disabling.

Only two witnesses were called at the hearing, Brown and his physician, Dr. William K. Rogers, M. D., of Knoxville. Ignoring the evidence with respect to the injuries made the basis of the award against the Second Injury Fund, it appears that after petitioner had worked for forty years in the same coal mine, the last twelve years being spent working for Consolidation, on May 8, 1967, he retired. The substance of Brown's testimony is that he retired because of a painful back and shortness of breath which prevented him from working. On July 27, 1967, Brown consulted Dr. Rogers, a recognized specialist in thoracic diseases, who, on the basis of a physical examination and an X-ray of Brown's lungs, gave the diagnosis Brown had contracted silicosis from working in the mine. His testimony was that the silicosis was not in a disabling stage. That silicosis progresses in three stages and that the first stage, in which Brown's disease was found at that time, had not progressed to the point that it was disabling. Dr. Rogers also testified that Brown's lung fields were clear, that there were no abnormal chest sounds, that there was no significant degree of emphysema. That he did pulmonary function studies on petitioner which showed a breathing capacity and vital capacity of ninety-one and ninety-two per cent of predicted normal, which is good for a man of Brown's age. That he observed no shortness of breath while Brown was in his office. From all of this Dr. Rogers gave it as his medical opinion that Brown was not disabled by the silicosis he found and that he could have continued to work at the time he retired.

It is quite clear from Dr. Rogers' testimony that petitioner Brown while he has contracted silicosis, is not disabled therefrom.

For the petitioner it is argued that we must sustain this award on Brown's testimony that for several years before he quit he suffered shortness of breath, to the point that he was in distress. And that since quitting he has not been able to pursue any gainful employment.

■■ The trouble we have in sustaining the award on the basis of this testimony is that Dr. Rogers' findings exclude the possibility that this shortness of breath is due to Brown's silicosis. Dr. Rogers testified exactly to the contrary. Where there is medical evidence that the occupational disease is disabling, the testimony of the employee may be considered in determining the extent of that disability. However, where the medical evidence is all to the effect that the occupational disease is not disabling, and that the symptoms complained of by the employee are not due to an occupational disease, the unsupported testimony of the employee cannot be made the basis of an award. As concerned as we are in seeing that workmen receive the full benefits of their compensation law we cannot go to the extreme end asked of us in this case.

In the course of Dr. Rogers' testimony he was asked, considering Brown's symptoms and his findings, if he could give an opinion as to Brown's disability at that time so far as working in the coal mines was concerned, and he said "I think that the evidence would indicate this man would never be employed in one of the coal mines again." And in answer to whether it would be a fair statement to say that Brown's disability as a coal miner was 100 per cent, he said "That's correct." However, Dr. Rogers explained this testimony as follows:

"Q. A few moments ago when you were talking about or when Mr. Parker asked you about the disability and you said rather than giving a disability you stated that he would not be employable again in the mines. I assume that you mean by that that if an employer had Mr. Brown examined on a pre-employment physical that as a result of the x-ray evidence of nodulation, then, that employer would not hire him?

A. That's correct.

Q. Just what you were talking about?

A. That's correct.

Q. That is based upon your knowledge of how employers respond and so forth?

A. It's based on my experience.

Q. And it has nothing to do with the ability or disability of Mr. Brown?

A. It's separate and distinct from what his physical disability is.

Q. You also responded that if you were examining him for an employer that you would not recommend that he be employed because of this nodulation and evidence of silicosis. If he were to sign a waiver of his occupational disease, that would change your opinion, or would it, as to his ability to do the work. * * *

A. I have always suggested this, but practically speaking, it has never been done.

Q. The point I am getting at is, that Mr. Brown, had he not retired from Consolidation Coal Company, based upon his physical condition, could have continued

working in the coal mines without any, apparent, disability?

A. On the basis of my examinations, he could."

On this record we can do nothing but set aside the award against Consolidation. Workmen's Compensation is not insurance against unemployment. The question is not, unfortunately, whether a coal mine operator will employ Brown but whether he has an occupational disease which has progressed to a disabling state; and the answer to this, is that he does not.

There is a matter which gives the Court concern and this is, that Dr. Rogers testified that the occupational disease of silicosis progresses to a disabling stage in certain individuals without further exposure to causative conditions in employment. So, while petitioner has an occupational disease which is not presently disabling there remains the possibility that it may become disabling in the future.

In view of this, and in view of our opinion in *Adams v. American Zinc Co.*, 205 Tenn. 189, 326 S.W.2d 425 (1959), where we said that statute of limitations commences to run in an occupational disease when the employee has or should have had in the exercise of reasonable caution, knowledge "that he has an occupational disease *and that it has injuriously affected his capacity to work to a degree amounting to a compensable disability.*", (Emphasis supplied), we are of opinion that we should not simply reverse the judgment of the lower court and dismiss the petition with the prejudice that would follow such an adjudication, but, that the suit is premature and should be remanded to the trial court and retired

to be reinstated at such time as Dr. Rogers may find the disease is actually disabling. It is so ordered, at Brown's cost.

DYER, CHIEF JUSTICE, CRESON, and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.