**Russell C. LAWSON**

v.

**EMPLOYERS INSURANCE OF WAUSAU.**

**Civ. A. No. 7126.**

United States District Court, E. D. Tennessee, N. D.

Jan. 14, 1971.

O. D. Bridges, Catlett, Ramsey & Bridges, Jefferson City, Tenn., for plaintiff.

Donald B. Oakley, Capps & Oakley, Morristown, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Russell C. Lawson has brought suit against his employer's insurance carrier under the Tennessee Workmen's Compensation Law for injuries resulting from an occupational disease. He contends that the long hours and irregular shifts that he was required to work caused a disabling chronic anxiety reaction with hypertension and related complications.

Plaintiff is forty-four years of age, married and two of his three children reside at his home. He started work with his present employer, after completing military service, some twenty-two years ago as a track operator. He received regular promotions and merit raises and supervised the training of about twenty new employees at the time

his alleged occupational disease became disabling on September 19, 1969.

In March, 1968, plaintiff had consulted his family physician, Dr. Lynch, concerning his nerves and dizziness. The doctor diagnosed labile hypertension and an ear difficulty. The hypertension was controlled with medication, and the decision was made and carried out to operate on the ear in May, 1968. Plaintiff returned to work in June, 1968 on a straight shift.[1] Late in 1968, plaintiff told his supervisor that his nerves were giving him difficulty and that he was not able to work on the changing shifts. In December, 1968, he was offered the job of training supervisor or investigator, both of which entailed permanent day hours of employment. Lawson understood both jobs were possibly of a temporary nature, and he chose to become a training supervisor because he had more experience with that job.

Lawson worked a regular shift without experiencing any difficulty with his nerves until June, 1969, when a strike of about one month's length occurred. Lawson and the other supervisory personnel were required to work long hours during this period. Company records show Lawson worked sixty-seven overtime hours one week. Lawson testified he worked from twenty to twenty-two hours on some shifts. After the strike many new employees were hired, and plaintiff was required to return to shift work.

During and after the strike, plaintiff's physical and mental condition deteriorated. He had difficulty in sleeping, loss of appetite and weight, moodiness and increased hypertension. His wife testified that he was short with his family and did not especially enjoy their company.

In September, 1969, plaintiff claims that he was directed to work the various shifts for less than the normal weekly duration of the shift and that the stress made him so nervous that he could not do the work. He quit on September 19, 1969 after his supervisor told him that it was not possible to place him on a job with consistent hours.[2]

Doctor Lynch referred plaintiff to Dr. Shoemaker, a psychiatrist, who diagnosed a chronic anxiety reaction with hypertension and other complications. Dr. Shoemaker was ill and not present at trial, but Dr. Herndon, another psychiatrist, concurred in this finding. All three doctors were of the opinion that the shifting caused the difficulty and Drs. Lynch and Shoemaker advised him to stop work. Plaintiff testified and Dr. Lynch concurred in his opinion that he was able to do all the work that he had formerly performed at American Enka if he was employed in a job that did not involve shift work.

Doctor Aker, a cardiac specialist, examined plaintiff at defendant's request. He testified in effect that plaintiff was not disabled in any manner. Labile hypertension, or hypertension which fluctuated under varying degrees of stress was by plaintiff's personal history controllable with medication and the doctor by examination and X-rays found a normal, unremarkable heart.

■ Plaintiff is not barred by the one-year statute of limitations. After Dr. Shoemaker informed him that he was under a disability, suit was begun within a year. Brown v. Consolidation Coal Company, Tenn., 451 S.W.2d 684 (1970).

■ The parties stipulated that American Enka had elected the alternative plan covering occupational diseases.

---

1. American Enka, plaintiff's employer, operates full time. Consequently, employees work varying shifts. One may work from 7:00 A.M. until 3:30 P.M. for two weeks, then shift from 3:30 P.M. until midnight for two weeks, etc. The proof is not clear that plaintiff worked under this type arrangement until December, 1968, but the Court will consider this to be the case.

2. The record does not show that the Company has discriminated against Lawson.

T.C.A. 50–1103. Plaintiff contends the anxiety reaction and hypertension are occupational diseases arising out of and in the course of his employment. We do not agree.

T.C.A. 50–1101 defines the term "occupational diseases." Employers are only liable for occupational diseases "arising out of and in the course of employment." In determining that a disease arises out of and in the course of employment, the statute contains the following requirement:

> "* * * A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances, * * * (6) [that the disease] appear to have had its origin in a *risk* connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction." (Emphasis added) T.C.A. 50–1101.

Plaintiff and his doctors agree that his anxiety reaction and hypertension were caused by the shift work and the excessive hours worked. This Court is not yet prepared to hold that shift work or a requirement that supervisory personnel work long hours during a strike is a "risk connected with employment." These conditions are not present in any peculiar or increased degree by comparison with employment generally. Compare Chapman v. Aetna Casualty and Surety Co., 221 Tenn. 376, 426 S.W.2d 760 (1968) where the stress occasioned by a seasonal termination notice was held not a hazard in the course of a deceased construction worker's employment. Furthermore the implication to business concerns engaging in shift work by allowing recovery for a psychological malady caused by shift work is great.

In passing, the Court observes that it is not aware of any Tennessee Workmen's Compensation cases which have allowed recovery for a psychological injury without an actual traumatic injury. Cf. Buck and Simmons Auto and Electric Supply Co. v. Kesterson, 194 Tenn. 90, 250 S.W.2d 39 (1952); McKenzie v. Campbell and Dann Mfg. Co., 209 Tenn. 475, 354 S.W.2d 440 (1962); Gluck Bros., Inc. v. Pollard, 221 Tenn. 383, 426 S.W.2d 763 (1968).

Plaintiff is not disabled within the meaning of the Workmen's Compensation Law because his own doctors testified, and he says himself, that he can do the same kind of work he was doing at the time he became afflicted with this nervous anxiety, provided he works on regular shifts. Mr. Lawson is not an odd lot on the labor market and not unfit for general employment. Greeneville Cabinet Co. v. Ramsey, 195 Tenn. 409, 260 S.W.2d 157 (1953).

The Court concludes, as unfortunate as it may appear, that plaintiff's condition is not covered by the Workmen's Compensation Act of Tennessee. The evidence fails to show that plaintiff sustained an injury from an occupational disease that arose out of and in the course of his employment that caused a disability.

It is, therefore ordered that the suit be, and same hereby is, dismissed.