FILED

March 24, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 1:47 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| GLENN STEWART, | ) | |
| Employee, | ) | Docket No. 2015-06-0710 |
| | ) | |
| v. | ) | State File No. 41505-2015 |
| | ) | |
| COST PLUS/WORLD MARKET, | ) | Judge Joshua Davis Baker |
| Employer. | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This matter came before the Court on a Request for Expedited Hearing filed by the employee, Glenn Stewart, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Stewart has alleged injuries to his right knee and left shoulder from a December 1, 2014 accident, and another right knee injury from an accident on May 29, 2015. The present focus of this case is Mr. Stewart's entitlement to additional medical treatment for these injuries. For the reasons set forth below, the Court finds Mr. Stewart is likely to succeed at a hearing on the merits in proving entitlement to medical treatment for injuries related to both accidents.[1]

### History of Claim

Mr. Stewart is a forty-eight-year-old resident of Cheatham County, Tennessee, who worked as a store manager for the employer, Cost Plus/World Market (World Market).[2] While the parties dispute compensability of his injuries, they stipulated the actions allegedly resulting in Mr. Stewart's injuries occurred in the course and scope of his employment for World Market.

Mr. Stewart testified that, on December 1, 2014, he climbed to the third step on a ladder to retrieve two boxes from a shelf. When he reached above his head to take the boxes, the topmost box slipped off the bottom box, struck Mr. Stewart, and knocked him off the ladder. His right knee hit the ground and he struck his shoulder on a shelving unit.

---

[1] A complete listing of exhibits and the technical record admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] Only Mr. Stewart testified at trial. Accordingly, the Court derived this claim history from Mr. Stewart's testimony or the exhibits. All quotations in the history came from Mr. Stewart's testimony unless otherwise noted.

According to Mr. Stewart, a coworker, Rachel Gibson, witnessed the fall and came to check on Mr. Stewart. Mr. Stewart told her, "I just got knocked off the ladder; it's all good" and "laughed it off." Mr. Stewart noticed minor swelling in his knee and stated his shoulder "was a little trick," but he did not believe his injuries were serious. He iced his knee and took ibuprofen.

Mr. Stewart told the store's assistant manager of the incident, and also mentioned it in passing to World Market's area manager, Chris Freeman, when Mr. Freeman visited the store approximately ten days after the incident occurred. He testified he told Mr. Freeman "he took a stumble off the ladder." He did not file a formal report with Medcor.[3]

According to Mr. Stewart, he continued performing his normal job as store manager, which required him to be on his feet most of the time. He intermittently suffered pain and swelling in his right knee over the next several months, and took over-the-counter medication to help with pain and swelling.

On May 29, 2015, Mr. Stewart was in the World Market stockroom retrieving a sofa for a customer. The store had just opened and Mr. Stewart had no one to help move the sofa; there were also no furniture "handtrucks" available. Mr. Stewart successfully maneuvered the sofa out of the stockroom and onto the sales floor. After moving the sofa to the sales floor, Mr. Stewart attempted to push the sofa across the floor to the front of the store. Mr. Stewart testified he "got real low to the ground" and, as he pushed the sofa forward he felt "an incredible burn go through my knee." Mr. Stewart put some ice on his knee and reported the injury to Medcor, pursuant to World Market protocol regarding workplace injuries. When reporting the May 29 injury, Mr. Stewart also told Medcor about the December 1, 2014 workplace accident.

Medcor directed Mr. Stewart to Tennessee Urgent Care Associates, a practice affiliated with U.S. Healthworks, where he treated with Dr. Jayaraman Adhi on June 2, 2015. Dr. Adhi recommended ice packs and physical therapy, and referred Mr. Stewart for an MRI. (Ex. 1.) She also assigned work restrictions of no kneeling or squatting, and no climbing ladders. *Id*.

Approval for Mr. Stewart's recommended physical therapy was not forthcoming, and his June 17, 2015 MRI revealed a right-knee torn meniscus. According to Mr. Stewart, the adjusters for Broadspire, the third-party administrator for World Market's workers' compensation insurance, advised him several times that they were investigating

---

[3] MedCor is a company that accepts reports from World Market employees injured on the job.

his claim. Over the investigation period, Mr. Stewart testified his claim was transferred to three different adjusters.

On July 13, 2015, Mr. Stewart resigned his employment at World Market for reasons unrelated to the accidents. (Ex. 4.) That same month, World Market provided Mr. Stewart a panel of physicians, and he selected Dr. Brandon Downs of Premier Orthopaedics and Sports Medicine to provide treatment. Dr. Downs reviewed the MRI results and diagnosed a right medial meniscus tear. (Ex. 1.) Dr. Downs injected Mr. Stewart's right knee with a mixture of depo-medrol, lidocaine and Marcaine. He also recommended arthroscopic surgery. *Id.* In addition to the knee condition, Dr. Downs also diagnosed a left-shoulder labrum tear. *Id.* He did not, however, recommend surgery for this condition.

After Dr. Downs recommended surgery for Mr. Stewart's knee, World Market denied his claim and provided no further medical treatment. The denial letter, dated September 4, 2015, stated: "After thorough review, our investigation of the facts indicates this incident does not meet the criteria for acceptance as an industrial matter. Our decision is based upon the medical information secured, the facts of the investigation and the provision set forth in the Workers' Compensation Act of Tennessee." (Ex. 3.) The letter referenced December 1, 2014, as the "date of loss." It made no mention of the alleged May 29, 2015 incident.

After World Market denied his claim, Mr. Stewart filed a Petition for Benefit Determination seeking medical benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). (T.R. 2.) Mr. Stewart filed a Request for Expedited Hearing, and this Court heard the matter on February 25, 2016.

At the Expedited Hearing, Mr. Stewart admitted he did not formally report or notify a supervisor of the December 1, 2014 accident. Mr. Stewart maintained, however, that, although he experienced problems following the December accident, his knee pain became more pronounced following the May 29, 2015 incident.

During the time between the December 2014 and May 2015 incidents, Mr. Stewart testified he continued performing his normal work activities despite his intermittent knee problems "for the good of the business." During that same time period, Mr. Stewart also performed with a country band and acted in a music video. He could not remember the exact number of times he performed with the band, but stated he sat down while playing guitar for some performances and stood on stage to play at others. Mr. Stewart also testified he walked around while on stage, but stated performing did not require him to "thrash around."

3

World Market entered into evidence several postings from Mr. Stewart's Facebook page depicting his musical performances, as well as a short video clip. (Exs. 5-8.) Mr. Stewart denied that he danced during any performance and also denied the video clip (Ex. 8.), which is a only few seconds in length, showed him dancing. Instead, Mr. Stewart characterized his actions as posing for the camera while mimicking playing a guitar. He further testified the physical stress attendant to his employment duties for World Market exceeded the physical stress associated with performing.

Concerning the physical stress of his job, World Market's counsel asked why Mr. Stewart failed to seek medical care and possibly receive workplace restrictions following the December 2014 injury. He explained: "At that point I wasn't having huge issues with the knee; it was just the swelling and some pain . . . here and there in my shoulder. It wasn't consistent; it wasn't chronic at that point. I was just very cautious and mindful so I wouldn't aggravate it."

Mr. Stewart testified that, after suffering the injury on May 29, 2015, his knee continued to hurt but not on a daily basis. He stated he had good days, but there were others where his knee "really smarted." Despite the knee injury, Mr. Stewart continued to perform with his band but testified he began wearing a knee brace and "was mindful of his stepping on stage." He also wore the knee brace while working.[4]

World Market argued this Court should not hold it responsible for the December 1, 2014 injury because Mr. Stewart admitted he never reported it. Therefore, his failure to provide notice in accordance with Tennessee Code Annotated 50-6-201(2015) bars his claim.

Additionally, World Market argued the Court should deny medical benefits for Mr. Stewart's May 29, 2015 injury. World Market insists if Mr. Stewart properly reported the first incident, medical treatment would have begun, and his right knee would not have been as vulnerable to subsequent injury on May 29, 2015. Moreover, the precise nature and extent of the injury that allegedly occurred in May 2015 is unknown. Mr. Stewart's torn meniscus could well have occurred in the December incident, and was neither advanced nor exacerbated by the May 29, 2015 accident.

---

[4] During his testimony, Mr. Stewart and World Market's counsel spent a significant amount of time on a line of questioning concerning Mr. Stewart's resignation from World Market and whether World Market accommodated the workplace restrictions imposed on Mr. Stewart by Dr. Adhi. The line of questioning is only relevant as it relates to Mr. Stewart's entitlement to temporary disability benefits. However, because Mr. Stewart did not request temporary disability benefits, the Court has not recounted the testimony here.

4

**Findings of Fact and Conclusions of Law**

Mr. Stewart alleged he suffered two workplace injuries; the first occurred on December 1, 2014, the second on May 29, 2015. His entitlement to additional medical care for either, or both, injuries is the central focus of litigation as this point.

In general, Mr. Stewart bears the burden of proving all elements of his claim by a preponderance of the evidence in order to recover workers' compensation benefits. Tenn. Code Ann § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co*., No. 2015-01-0012, 2015 TN Wrk. Comp. Appl. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, he does not have to prove every element of his claim by a preponderance of the evidence in order to obtain relief at this expedited hearing. *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27. 2015). Instead, he must come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2015). For the reasons provided below, the Court finds Mr. Stewart carried his burden of proving a likelihood of success at a trial on the merits on the issue of his entitlement to treatment for his injuries related to both accidents.

## I.     Mr. Stewart's  Injuries

In order for Mr. Stewart to be eligible for benefits at all, he must have suffered an injury, or injuries, as defined by the Workers' Compensation Law. Under the Workers' Compensation Law, an "injury" means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee[.]" Tenn. Code Ann. § 50-6-102(14) (2015). To constitute a viable claim for workers' compensation benefits the injury must be "by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." *Id*. "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *Id*. (internal quotations omitted).

Here Mr. Stewart testified he fell from a ladder while retrieving boxes from a shelf during the course of his work for World Market. He also stated he hurt his left shoulder and right knee when he fell. Mr. Stewart further testified he injured his knee while pushing a sofa at work. World Market offered no evidence to rebut Mr. Stewart's testimony. Therefore, all testimony showed the specific incidents Mr. Stewart alleged occurred at work. Neither party identified another probable cause for his shoulder and knee injuries. The Court, therefore, finds Mr. Stewart would likely succeed at a hearing on the merits in proving he suffered these injuries. *See Id*. at § 50-6-239; *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9.

## II.     World Market's Notice Defense

Although Mr. Stewart proved he suffered workplace injuries, World Market argued he cannot recover benefits for the left-shoulder and right-knee injuries he suffered during the December 1, 2014 work accident because he failed to timely notify World Market that injury occurred.  The Workers' Compensation Law requires employees to promptly report all workplace injuries:

> Every injured employee . . . shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer . . . notice of the injury . . .   No compensation shall be payable under this chapter, unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

Tenn. Code Ann. § 50-6-201(a)(1) (2015). "Notice must be calculated reasonably to convey the message that the employee has suffered an injury arising out of and in the course of employment." *Jones v. Helena Truck Lines, Inc.*, 833 S.W.2d 62, 64 (Tenn. 1993).  Rules concerning notice exist to give the employer an opportunity to investigate the claim before evidence spoils, and to allow the employer to facilitate appropriate medical care for the injured employee in a timely manner. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. Workers' Comp. Panel 1995).

It is undisputed that Mr. Stewart failed to provide written notice within thirty days of his December 1, 2014 accident.  Accordingly, the question becomes whether Mr. Stewart had a reasonable excuse for failing to provide written notice.  "In determining whether an employee has shown a reasonable excuse for failure to give such notice, courts will consider the following criteria in light of the above reasons for the rule: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusing of the requirement, and (3) the excuse or inability of the employee to timely notify the employer." *McCaleb*, 910 S.W.2d at 415 (citing *Gluck Bros., Inc. v. Pollard*, 426 S.W.2d 763 (Tenn. 1968)).  Based on its review of the totality of the circumstances, the Court finds Mr. Stewart's failure to give written notice should be excused.

First, the Court finds World Market had actual notice the December 1, 2014 accident occurred.  Although Mr. Stewart did not report the accident, he told his regional manager, Chris Freeman, "he took a stumble off the ladder" approximately ten days after the incident occurred.  While the conversation occurred casually and Mr. Stewart downplayed the seriousness of his condition, the Court considers the statement sufficient to at least notify World Market that a work-related accident occurred, serious or not.  *See*

6

*Gluck Bros.*, 387 S.W.2d at 830 ("[I]t is the established law of this State that while knowledge of a fellow workman of the injury cannot be imputed to the employer, if an employee's superior is given notice of the accident and injury, this constitutes notice to the employer.").

Despite World Market having notice of an accident, it still did not have information from which to conclude the accident injured Mr. Stewart. *See Masters v. Industrial Garments Mfg. Co.*, 595 S.W.2d 811, 816 (Tenn. 1980) ("In order for a communication to constitute either written notice or actual knowledge on the part of the employer it must be calculated to reasonably convey the idea to the employer that the employee claims to have suffered an injury arising out of and in the course of [the] employment."). Under these circumstances, however, the Court does not find Mr. Stewart's failure to report the specific injuries fatal to his claim because Mr. Stewart did not know he suffered a disabling injury.

Mr. Stewart testified that, although his knee periodically swelled and he felt pain in his knee and shoulder following the December 1, 2014 fall from the ladder, he did not believe his injuries were serious and thought he had suffered a sprain. He testified: "I wasn't having huge issues with the knee; it was just the swelling and some pain . . . here and there in my shoulder. It wasn't consistent; it wasn't chronic at that point. I was just very cautious and mindful so I wouldn't aggravate it."

Mr. Stewart did not learn the seriousness of his condition until he visited Drs. Adhi and Downs after the May 29, 2015 accident. At that time, Dr. Downs diagnosed a right medial meniscus tear and a left-shoulder labrum tear. (Ex. 1.) While it is unclear whether Mr. Stewart tore his meniscus when he fell from the ladder on December 1, 2014, or while pushing the couch on May 29, 2015, it is clear neither the condition of his knee nor his shoulder prevented him from working or participating in his normal life activities over the period between the two accidents. Accordingly, the proof did not show Mr. Stewart knew he suffered an accident that required medical treatment until that date.

Of course, analysis of this issue would not be complete without discussing Mr. Stewart's status as store manager. As manager of the World Market store, Mr. Stewart knew the injury reporting requirements. Despite this knowledge, he did not formally report the December 1, 2014 accident for approximately six months. The Court finds that a person in a managerial position would have reported the incident and sought help if he actually needed it. However, as the set forth above, Mr. Stewart did not believe his injuries required medical attention and, for that reason, the Court finds Mr. Stewart's failure to file written notice reasonable.

The last factor to consider when determining whether notice should be excused is the amount of prejudice resulting to the employer. *McCaleb*, *supra*. Here, the Court finds excusing the notice requirement would result in little, if any, prejudice to World

Market.  Mr. Stewart told Mr. Freeman of the December 1, 2014 accident only ten days after it occurred.  World Market, therefore, could have initiated an investigation at that time and offered Mr. Stewart a panel.  Furthermore, while World Market argues the severity of Mr. Stewart's symptoms likely increased due to his lack of care, it provided no evidence supporting this argument.

For all these reasons, the Court finds Mr. Stewart's failure to provide timely written notice of the December 1, 2014 workplace accident should be excused.  Accordingly, World Market's notice defense is denied.

Concerning the May 29, 2015 accident, there is no question Mr. Stewart timely reported the claim and sought care.  World Market initially accepted the claim and provided medical treatment but later denied the claim alleging that Mr. Stewart's need for treatment arose out of the untreated December 1, 2014 incident.  Because the Court finds Mr. Stewart's failure to provide written notice should be excused, World Market must reinstitute his medical treatment.

### III.    Mr. Stewart's Request for Medical Care

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]"  *See* Tenn. Code Ann. § 50-6-204(a)(l)(A) (2014).  Upon being provided notice of a workplace injury, the Workers' Compensation Law requires an employer to "designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or  specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician."  *Id.* at 50-6-204(a)(3)(A)(i).   Any care recommended by a physician chosen from the panel is presumed to be reasonable and necessary for treatment of the work-related injury.  Tenn. Code Ann. § 50-6-204(a)(3)(H) (2015).

Mr. Stewart selected Dr. Downs from a panel provided by World Market.  *See Id.* at § 50-6-204(a)(3)(A)(i).  Dr. Downs recommended arthroscopic surgery to repair Mr. Stewart's right knee.  His recommendation is presumptively reasonable and necessary. *See Id*. at § 50-6-204(a)(3)(H).

To rebut the presumption of reasonable necessity attached to Dr. Downs' opinion, World Market argued Mr. Stewart would not have needed knee surgery if he had timely reported the December 1, 2014 incident.  As set forth previously, the Court does not find World Market's argument persuasive.  Accordingly, it failed to rebut the presumption that the knee surgery recommended by Dr. Downs is reasonable and necessary.

8

For all these reasons, the Court finds Mr. Stewart will likely succeed at a hearing on the merits in proving entitlement to medical treatment for his shoulder and right-knee injuries. This Court, therefore, finds World Market must pay for knee surgery recommended by Dr. Downs.[5]

**IT IS, THEREFORE, ORDERED** as follows:

1. World Market shall provide Mr. Stewart the knee surgery recommended by Dr. Downs. Mr. Stewart or Dr. Downs shall provide bills for the treatment to World Market or its workers' compensation insurance carrier.

2. This matter is set for an Initial (Scheduling) Hearing on April 18, 2016, at 9:30 a.m. (CDT).

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the __24th day of March, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

---

[5] Although Dr. Downs diagnosed a left-shoulder labrum tear, the Court sees no recommendations for future treatment of the labrum tear.

<u>Initial Hearing:</u>

An Initial (Scheduling) Hearing has been sent for **April 18, 2016, at 9:30 a.m. Central Time** with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).</u>**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

11

## APPENDIX

Exhibits:

1. Medical Records of Glenn Stewart
2. Affidavit of Glenn Stewart, November 25, 2015
3. Broadspire Utilization Review documents
4. Email from Glenn Stewart to Chris Freeman, July 13, 2015
5. Collective Facebook pages
6. Facebook posting, February 11, 2015
7. Facebook posting, February 27, 2015
8. February 2015 video
9. Email from Jaclyn Pang with attached letter, June 9, 2015

Technical Record:

1. Petition for Benefit Determination, September 28, 2015
2. Dispute Certification Notice, November 3, 2015
3. Request for Expedited Hearing, November 10, 2015
4. Glenn Stewart's statement of events
5. World Market's Response to Request for Expedited Hearing , December 7, 2015
6. World Market's position statement, October 26, 2015

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the __24th__ day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Glenn Stewart | X | | X | 2023 Chris Court, Pleasant View, TN. 37146 <br><br> glennfromtheband@msn.com |
| Haley E. Moody | | | X | Haley.moody@leitnerfirm.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

13