FILED

October 12, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:47 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| TORRIS MILLER,<br>　　　　Employee,<br>v.<br><br>TA OPERATING CORP.,<br>　　　　Employer,<br>And<br><br>AMERICAN ZURICH INS. CO.,<br>　　　Insurance Carrier. | Docket No.: 2015-07-0114<br><br>State File No.: 95843-2014<br><br>Judge Amber E. Luttrell |

---

## EXPEDITED HEARING ORDER FOR TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Requests for Expedited Hearing (REH) filed by the employee, Torris Miller, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Mr. Miller seeks past medical and temporary disability benefits for a back injury. The primary issues before the Court concern when Mr. Miller gave notice of a work-related injury triggering the employer's obligation to furnish a panel of physicians and initiate temporary disability benefits, and whether the employee's termination for job abandonment precludes him from receiving ongoing temporary disability benefits. For the reasons set forth below, the Court finds Mr. Miller carried his burden of proving entitlement to temporary disability benefits, but did not establish the requisite proof for an award of past medical expenses.

### History of Claim

Mr. Miller is a forty-four-year-old resident of Madison County, Tennessee, who worked for TA Operating as a diesel mechanic. Mr. Miller worked the night shift from six o'clock in the evening until six o'clock the following morning.

On November 3, 2014, while changing a tractor-trailer tire, Mr. Miller stooped to remove the lug nuts with an air gun weighing one hundred pounds and experienced

sudden pain from his low back to his left foot. Mr. Miller continued working and finished changing the tire. His back pain increased; therefore, at the end of his shift on November 4, 2014, Mr. Miller reported the injury to his immediate supervisor, Kevin Corbin. Mr. Miller testified he told Mr. Corbin he "messed up something in his back" and described how it happened. Mr. Corbin advised he would file a workers' compensation claim. However, Mr. Miller responded, "Don't do that because I'll lose my job. It may be just a strain or pull and I don't want to lose my job."[1] Despite his request, Mr. Miller testified that Mr. Corbin insisted he must file a workers' compensation claim under Tennessee law. Following this conversation, Mr. Miller believed Mr. Corbin filed a workers' compensation claim for his back injury. TA Operating did not give Mr. Miller a report of injury to sign or offer a panel of physicians at that time.

On November 5, 2014, Mr. Miller sought treatment from Dr. Michael Pearson, a chiropractor at Sports Orthopedic and Spine Clinic. (Ex. 1 at 5-8.) He gave a history of acute low-back pain and weakness in the left leg following a November 3, 2014 injury while lifting an impact gun at work. Following a physical exam, Dr. Pearson diagnosed lumbalgia, muscle spasms, probable lumbar degenerative disc disease, and possible lumbar radiculitis. He ordered ultrasound therapy and took Mr. Miller off work for a few days. Mr. Miller continued therapy until November 19, 2014, when Dr. Pearson referred him to Dr. Keith Nord for an orthopedic evaluation.

On November 19, 2014, Mr. Miller saw Dr. Nord and reported continued low-back pain and pain running down his left leg. *Id.* at 14-20. Dr. Nord diagnosed a lumbar strain, ordered an MRI, and took Mr. Miller off work. The MRI revealed disc abnormalities at multiple levels. Dr. Nord diagnosed "intervertebral disc rupture," and referred Mr. Miller to Dr. Roy Schmidt for an LES injection.[2] He kept Mr. Miller off work. *Id.* at 22-31.

Mr. Miller presented to Dr. Schmidt on December 22, 2014. *Id.* at 34-35. He informed Dr. Schmidt of his November work injury to his back. Dr. Schmidt noted the visit was under Mr. Miller's personal health insurance; however, Mr. Miller reported it as a work injury and stated "WC is involved now." Dr. Schmidt scheduled the LES injection and kept Mr. Miller off work. *Id.* at 33. On January 6, 2015, Dr. Schmidt performed an LES injection at the L3-4 level on the left. He kept Mr. Miller off work, and referred him to physical therapy. *Id.* at 37-38. Mr. Miller completed therapy and returned to Dr. Nord on March 30, 2015. *Id.* at 69.

According to Mr. Miller's undisputed testimony, he regularly communicated with TA Operating while undergoing medical treatment for his work injury. Specifically, Mr.

---

[1] Mr. Miller testified his apprehension was based upon his experience with a previous employer, who terminated him following his report of a work-related shoulder injury.

[2] Dr. Nord did not indicate the level of the disc rupture in his diagnosis.

Miller testified his wife drove him to TA Operating's office after every doctor's appointment, and he personally gave Arnold Wells, the general manager, or another manager his work-status note from the doctor showing he was off work. Mr. Miller also communicated with Mr. Wells on the telephone in December 2014, concerning his work injury. A written statement from Mr. Wells confirmed he spoke on the telephone to Mr. Miller on December 1, 2014, regarding his back injury and possible surgery. In the statement, Mr. Wells stated, "Mr. Miller told me that he was concerned that his insurance would not pick up the bill once they found out he done it at work." (Ex. 2C.) Mr. Wells further stated that Mr. Miller did not want to turn this into a workers' compensation claim, and he refused to make a statement since an online report had already been filed. Mr. Wells' statement further indicated that Mr. Miller commented he would not see the medical doctor provided by the company.[3] *Id.*

Mr. Miller acknowledged speaking to Mr. Wells in December 2014; however, he denied refusing medical treatment to Mr. Wells or telling him that he did not want to file a workers' compensation claim. Although there appears to be a dispute over the details of the December 1, 2014 telephone conversation, the following day Mr. Wells prepared and filed an Employer's First Report of Work Injury. (Ex. 6.) In the report, Mr. Wells identified the November 3, 2014 injury date, and noted Mr. Miller notified the employer of his injury on November 5, 2014.[4]

Mr. Miller received a letter dated December 17, 2014, from TA Operating's senior vice-president acknowledging his workers' compensation claim and requesting that Mr. Miller submit for a post-accident drug test on or before December 23, 2014. (Ex. 7.) Mr. Miller complied and submitted to a drug screen on December 22, 2014.

Following the drug test, Mr. Miller testified he called Mr. Wells and asked whether he would receive workers' compensation temporary benefits or unemployment benefits from TA Operating. Mr. Wells responded he could not speak to him because he was represented by counsel. TA Operating did not offer Mr. Miller a panel of physicians at any of these interactions in the month of December 2014.

TA Operating's workers' compensation carrier requested a recorded statement from Mr. Miller through counsel at the end of January 2015. The adjuster took Mr. Miller's statement on February 24, 2015. TA Operating subsequently offered Mr. Miller a panel of orthopedic physicians, and he selected Dr. Nord on March 11, 2015.

Mr. Miller returned to Dr. Nord on March 30, 2015, for authorized treatment. Dr.

---

[3] The Court notes TA Operating had not offered Mr. Miller any medical treatment at the time Mr. Wells prepared his statement.

[4] The Court notes the November 5 date is one day after Mr. Miller testified he reported the injury to Mr. Corbin on November 4. However, the Court does not find this minor inconsistency material, considering either date is well within the thirty-day period to give proper notice under Tennessee Code Annotated section 50-6-201 (2014).

Nord recommended ongoing treatment; however, he opined Mr. Miller could return to work on restricted duty of no lifting over ten pounds and alternating sitting/standing. When his counsel contacted TA Operating regarding returning to work on light duty, Mr. Miller learned that TA Operating terminated him on January 29, 2015, for what the employer described as a "voluntary separation." (Ex. 2A.) At the hearing, TA Operating alleged that Mr. Miller abandoned his job effective January 29, 2015.

Mr. Miller's termination stemmed from Mr. Miller's visit to the office to pick up his tools. The parties disputed the actual date of this visit at the hearing. Regardless of the date, the parties agreed that Mr. Miller did, in fact, come to the office to pick up his personal toolbox. Mr. Miller testified that someone previously stole tools from his toolbox. Given the period of time Mr. Miller was off work, he stated he went to the office with two friends to pick up his toolbox for safekeeping. The toolbox was too large and heavy to pick up by himself; therefore, his friends loaded the tool box on a truck. At that time, Mr. Miller spoke to Mr. Wells at the office, and Mr. Wells stated, "You aren't leaving me, are you?" Mr. Miller responded, "No, that will never happen." He told Mr. Wells he was simply concerned about his tools. Mr. Wells assisted Mr. Miller by placing bags over the top of the toolbox to protect it from the rain.

Somewhat contrary to Mr. Miller's account, TA Operating's Personnel Action Form notes, "The employee came into the shop and removed his tool box. A notice was not given to management as to what his intentions were. The employee has not returned to work as of this date." *Id.*[5] The form is signed by Mr. Wells and Becky Weatherholt, the bookkeeper. Mr. Miller testified he did not see Ms. Weatherholt when he visited the office. He contended he spoke to Mr. Wells and made clear he was not resigning.

Mr. Miller continues to receive authorized medical treatment. Dr. Nord referred Mr. Miller for a neurosurgical evaluation. Subsequently, TA Operating offered Mr. Miller a panel of neurosurgeons, and he selected Dr. Parsioon.

TA Operating declined to pay temporary disability benefits, and also declined to pay Mr. Miller's medical expenses prior to February 24, 2015, the date of Mr. Miller's recorded statement. Mr. Miller filed a Petition for Benefit Determination on June 16, 2015. (T.R. 1.) The parties did not resolve the disputed issues through mediation; therefore, the Mediation Specialist filed the Dispute Certification Notice on July 27, 2015.

## Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in

---

[5] Employer concedes that the Personnel Action Form dated January 29, 2015, contains a typographical error. In the "termination" section, it states Mr. Miller's last day worked was November 1, 2014, which was two days *prior to* his work injury. They admit that date is incorrect. However, they failed to offer the correct date.

favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[6] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Notice*

Tennessee Code Annotated section 50-6-201(a)(1) (2014) provides that an injured employee "shall, immediately upon the occurrence of an injury, or as soon thereafter as practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury . . . within thirty (30) days after the occurrence of the accident." The notice should reasonably convey the idea that the employee has suffered an injury arising out of and in the course of his employment. *Masters v. Industrial Garments Mfg. Co., Inc.,* 595 S.W.2d 811, 816 (Tenn. 1980). Courts will consider the following criteria in determining whether an employee demonstrates a reasonable excuse for failure to give notice: (1) the employer's actual knowledge of the employee's injury, (2) lack of prejudice to the employer by an excusing of the requirement, and (3) the excuse or inability of the employee to timely notify the employer. *Gluck Brothers, Inc. v. Pollard,* 426 S.W.2d 763, 766 (Tenn. 1968).

In the present case, TA Operating contended Mr. Miller failed to give *written notice* of his work injury pursuant to Tennessee Code Annotated section 50-6-201(2014) until he provided his recorded statement to the adjuster on February 24, 2015. Thus, TA Operating submitted that Mr. Miller is not entitled to any medical or temporary disability benefits prior to February 24, 2015. The Court respectfully disagrees.

The Court finds the undisputed proof reveals Mr. Miller sustained a work injury to his back on November 3, 2014, and properly reported it to his immediate supervisor, Mr.

---

[6] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Corbin, at the conclusion of his shift on November 4, 2014. The Court finds Mr. Miller's immediate report of injury, combined with TA Operating's actions in December of filing a First Report of Injury and requiring Mr. Miller submit to an post-accident drug test, demonstrate TA Operating's actual notice of the work injury in accordance with Tennessee Code Annotated section 50-6-201 (2014). Moreover, the Court finds that TA Operating had actual knowledge that Mr. Miller's work injury required treatment by a physician who placed him off work due to the injury. Accordingly, the Court finds Mr. Miller came forward with sufficient evidence from which the Court concludes he is likely to prevail at a hearing on the merits regarding notice.

*Temporary Total Disability*

Temporary total disability (TTD) is payable to an injured employee who is totally disabled to work by her injury and while she is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to TTD, the employee must show he was "(1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and [his] inability to work; and (3) the duration of that period of disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004); *Jewell v. Cobble Construction and Arcus Restoration*, No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). When an employee demonstrates the ability to return to work or attains maximum medical improvement, then TTD benefits are terminated. *Jewell*, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21.

Here, the Court finds that the November 3, 2014 back injury prevented Mr. Miller from working. Thus, he is entitled to TTD benefits. The medical records establish that Drs. Pearson, Nord, and Schmidt placed Mr. Miller off work most weeks between November 5, 2014, and March 30, 2015. The Court finds the medical records do not address Mr. Miller's work status from November 9, 2014, through November 18, 2014 (six days), or February 4, 2015, through March 29, 2015 (thirty-nine days). Therefore, Mr. Miller has not provided proof of entitlement to TTD for those two periods. Excluding these two periods, the Court concludes that Mr. Miller is entitled to twelve weeks of past-due TTD benefits.[7]

*Temporary Partial Disability*

Temporary partial disability (TPD) refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, *3 (Tenn. Workers' Comp. Panel Nov. 15, 2005); *Jewell*, 2015 TN Wrk. Comp.

---

[7] The Court notes a Child Support Income Withholding Order admitted into evidence as Exhibit 4.

6

App. Bd. LEXIS 1, at *21-22.

The medical records indicate on March 30, 2015, Dr. Nord returned Mr. Miller to work with light-duty restrictions of no lifting greater than ten pounds and alternating sitting and standing. Based upon these restrictions, Mr. Miller would not be entitled to TTD benefits. However, he may be entitled to TPD benefits.

Ms. Weatherholt stated in her affidavit the company had temporary positions available to Mr. Miller while on restricted duty. (Ex. 2.) Based upon Ms. Weatherholt's statement, TA Operating contended it could have accommodated Mr. Miller's restrictions but for his termination for job abandonment on January 29, 2015. Thus, TA Operating submitted that Mr. Miller's termination for cause precludes him from receiving TPD benefits. Mr. Miller contended that he never resigned his position with TA Operating, and his termination on that basis was improper.

The Court carefully considered TA Operating's position that Mr. Miller's termination for job abandonment precludes him from receiving TPD benefits. However, based upon the evidence in this case, the Court disagrees. The only proof before the Court regarding the basis for Mr. Miller's termination was a "Personnel Action Form" that simply checks a box by "termination" and lists the reason as a "voluntary separation." The "additional comments" section of the form indicates when Mr. Miller picked up his tools, "A notice was not given to management as to what his intentions were. The employee has not returned to work as of to date." (Ex. 2A.)

Mr. Miller had not returned to work because Dr. Schmidt took him off work in January for his work-related back injury. The Court further finds Mr. Miller credible when he testified he specifically told Mr. Wells he was not resigning when he picked up his toolbox. The Court accepts Mr. Miller's explanation that he wanted to secure his tools to avoid theft while he was off work. The evidence indicates this trip likely occurred in January 2015, as reflected in the Personnel Action Form, rather than March 2015. However, the Court finds Mr. Miller's poor recollection of dates does not discount his otherwise credible testimony concerning his visit to the office.[8] Even if minor and insignificant details vary, an injured worker should not be penalized simply for being a poor historian. *Orman v. William Sonoma*, 803 S.W.2d 672, 677 (Tenn. 1991). Accordingly, the Court finds Mr. Miller's termination was improper, and that Mr. Miller is entitled to TPD from March 30, 2015, and ongoing until released without restrictions by an authorized treating physician, is able to resume gainful employment, or until placed at MMI.

---

[8] The Court notes that Dr. Schmidt's January 6, 2015 record states, "Pt had been put off work in November and is asking when he [can] go back to work as a diesel mechanic." (Ex. 1 at 36.) The Court finds this statement to Dr. Schmidt in January supports Mr. Miller's contention that he had no intention of resigning his employment.

7

*Compensation Rate*

A dispute exists regarding the compensation rate of $296.47 reflected in the wage statement. Mr. Miller contested the wage statement, arguing that it does not accurately reflect the commission he earned at TA Operating after completing his three months of training. The dispute centered around the date Mr. Miller began working for TA Operating and when he started earning commission. Mr. Miller initially testified he began work in May 2014. However, during cross-examination, Mr. Miller conceded he was confused on the dates and agreed he actually started in August 2014. Nevertheless, Mr. Miller challenged the accuracy of the wage statement. After hearing extensive testimony regarding this issue, the Court finds that Mr. Miller has not come forward with any evidence supporting his contention that the wage statement is incorrect. Thus, the compensation rate for Mr. Miller's temporary disability benefits shall be $296.47 per week.

*Payment of Medical Expenses*

Where an employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of physicians, it runs the risk of having to pay the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. *Lindsey v. Strohs Companies, Inc.*, 830 S.W.2d 899, 902 (Tenn. 1992). The liability of an employer for medical expenses incurred by the employee on his own turns on whether, under the circumstances, the employee was justified in obtaining further medical services without first consulting the employer. *Pickett v. Chattanooga Convalescent and Nursing Home, Inc.*, 627 S.W.2d 941, 944 (Tenn. 1982). The Tennessee Supreme Court held that, when an employee receives medical care for a work-related injury that the employer did not authorize, the employee must establish the necessity and reasonableness of the charges before the employer is responsible. *Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004).

Having found Mr. Miller gave proper notice to TA Operating of a work-related back injury on November 4, 2014, the Court finds TA Operating failed to timely offer Mr. Miller a panel of physicians pursuant to Workers' Compensation Law. Despite notice of a work injury, TA Operating did not offer Mr. Miller a panel until early March 2015. Thus, the Court finds Mr. Miller justified in seeking medical treatment on his own. The Court further finds the treatment provided by Drs. Pearson, Nord, Schmidt, and Jackson Physical Therapy medically necessary for Mr. Miller's work-related back injury. However, Mr. Miller did not offer any proof as to the reasonableness of the medical charges incurred. Thus, pursuant to *Moore*, the Court must deny his request for payment of these charges, at this time. *Id.* at 98.

8

**IT IS, THEREFORE, ORDERED** as follows:

1. The temporary disability benefit rate is $296.47 per week based upon Mr. Miller's average weekly wage of $444.71.

2. TA Operating or its workers' compensation carrier shall pay Mr. Miller past-due TTD benefits in the amount of $3,557.64 for a twelve-week period beginning November 5, 2014, through March 30, 2015, which excludes November 9, through November 18, 2014, and February 4, through March 29, 2015. The TTD benefits awarded are subject to the Child Support Income Withholding Order admitted into evidence as Exhibit 4.

3. TA Operating or its workers' compensation carrier shall pay Mr. Miller past-due TPD benefits beginning March 30, 2015, at the rate of $296.47 per week until he is no longer eligible for those benefits by: 1) reaching MMI; 2) returning to work at a wage equal to or greater than the pre-injury wage, or 3) release without restrictions by the authorized treating physician. TA Operating's representative shall immediately notify the Bureau, Mr. Miller and Mr. Miller's counsel of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination. The TPD benefits awarded are subject to the Child Support Income Withholding Order admitted into evidence as Exhibit 4.

4. Mr. Miller's request for payment of the medical bills of Sports Orthopedic & Spine, Dr. Schmidt, and Physical Therapy of Jackson for services prior to February 24, 2015, is denied. At this time, Mr. Miller has not come forward with sufficient evidence from which the Court may conclude he is likely to prevail at a hearing on the merits on this issue.

5. This matter is set for an Initial (Scheduling) Hearing on December 9, 2015, at 9 a.m. (CDT).

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

9

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 12th day of October, 2015.**

_[signature]_

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Amber E. Luttrell, Court of Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 12th day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Monica Rejaei, Esq. Employee's Attorney | | | X | mrejaei@nstlaw.com |
| Amber Sauber, Esq. Employee's Attorney | | | X | asauber@nstlaw.com |
| Jared Renfroe, Esq. Employer's Attorney | | | X | jrenfroe@spicerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12

# APPENDIX

Exhibits:

1. Medical records of:
   - Sports Orthopedic & Spine
   - Dr. Schmidt
   - Physical Therapy of Jackson
2. Affidavit of Becky Weatherholt with exhibits
3. Recorded Statement of Mr. Miller
4. Child Support Income Withholding Order
5. Post-Accident Drug Screen Lab Report
6. Employer's First Report of Work Injury
7. Correspondence from Bruce Sebera to Mr. Miller, dated December 17, 2014
8. Affidavit of Mr. Miller

Technical Record:[9]

1. Petition for Benefit Determination (PBD), filed June 16, 2015
2. Dispute Certification Notice (DCN), filed July 27, 2015
3. Request for Expedited Hearing (REH), filed August 13, 2015
4. Mr. Miller's Work Status/Restriction Table prepared by counsel for Employer

Marked for Identification Only:

1. Wage Statement
2. Mr. Miller's Employee Earning History Report

---

[9] The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

13